STATE v. BROOKS WHEELER, WALTER ENGLISH, alias TONY GENO, and MYRTLE OLIVER, alias THELMA OLIVER.

(Filed 19 November, 1958.)

**1. Criminal Law § 173—**

The Post Conviction Hearing Act is not a substitute for appeal, but provides procedure to determine as questions of law whether petitioners were denied the right to be represented by counsel, to obtain witnesses and to have a fair opportunity to prepare and present their defense.

**2. Same—**

While the Supreme Court is bound by the findings of fact made by the court below in proceedings under the Post Conviction Hearing Act if supported by evidence, it is not bound by the court's conclusions of law based on the facts found.

**3. Same—**

Findings in a proceeding under the Post Conviction Hearing Act disclosing that petitioners, although jointly tried, were not allowed to communicate with one another prior to trial, and that their attempts to contact witnesses and friends were unsuccessful, held not to support the court's conclusion of law that petitioners had not been denied any rights guaranteed to them by the Constitution of North Carolina, Art. I, secs. 11 and 17, and the 14th Amendment to the Constitution of the United States.

**4. Same—**

Where all of the affirmative evidence tends to show that after petitioners' arrest, their respective attempts to contact relatives and a material witness were thwarted by failure of an SBI agent to fulfil his promises to deliver the messages or find the witness, and the only evidence that any of petitioners actually got a message beyond the confines of the jail was that one of them was permitted to talk to her sister by phone, with testimony of the jailer that he did not know whether the phone call was permitted before or after the trial, *is held* insufficient to support the court's finding that petitioners were not denied the right to communicate with counsel or friends.

**5. Arrest and Bail § 7—**

Persons confined to jail on criminal charges have the right to communicate with counsel and friends and reasonable opportunity to exercise such right. G.S. 15-47.

**6. Constitutional Law § 31—**

Due process of law implies the right and opportunity to be heard and to prepare for the hearing.

**7. Same—**

Where three defendants are jointly indicted for an offense, they are entitled to confer together as to their joint defense to the joint charge, and each is entitled to know what facts and circumstances the others can contribute to the defense, and the denial of opportunity to exercise such right is a denial of their constitutional right to prepare for the hearing.

**8. Criminal Law § 173—**
    Where it appears that three defendants indicted for a joint offense
    were not allowed to communicate with each other prior to trial, but
    were led into court, each without attorney, relative or friend, and con-
    fronted by the State's prosecutor, ready for trial with his investigators
    and witnesses, it cannot be held that petitioners waived their rights to
    prepare for their defense by failing to complain to the court at the time
    of their arraignment, notwithstanding that they were mature persons
    not altogether strangers to court proceedings.

PARKER, J., not sitting.

*Certiorari* to review order of *Bone, J.,* February, 1958 Term, ONSLOW
Superior Court.

This is a proceeding under the North Carolina Post Conviction
Hearing Act, G.S. 15-217, *et seq.*

At the January Term, 1957, Superior Court of Onslow County, the
petitioners were tried under a bill of indictment charging robbery with
firearms. The offense is alleged to have occurred in Onslow County
on November 9, 1956, within a few minutes of four o'clock in the after-
noon. At the trial the victim identified petitioners Wheeler and Eng-
lish as the men who entered her home and at the point of a pistol
took from her $1,000 in cash and valuable jewelry.

The State offered other evidence tending to identify the petitioner
Oliver as the owner of and passenger in the getaway automobile, or
one similar thereto; and, further, to place the petitioners and the auto-
mobile in the vicinity of the victim's home near the time of the rob-
bery.

At the trial the petitioners were without counsel or witnesses. They
did not testify. All were found guilty and prison sentences of 25 years
for Wheeler and English and of 15 years for Oliver were imposed.
They did not take exceptions during the trial. They did not appeal.

In this proceeding the petitioners, seeking to have their conviction
set aside, allege in substance: Immediately after arrest they were
relieved of all valuables, including $300 from Wheeler and $140 from
English. They were placed in different jails and moved from one
county jail to another on numerous occasions between the date of the
arrest on November 10, 1956, and date of the trial in January, 1957.
They were not permitted to see or communicate with each other, or
with relatives or friends who were able and would have been willing
to employ counsel to represent them. They were forced to go to trial
without counsel, without any opportunity to identify and interview
witnesses, or to have this necessary function performed for them. Two
allegations of the petition and the solicitor's answer thereto are quoted:

"5. That although the defendants, your petitioners, were accused
of a joint crime they were not permitted to communicate with one

another; that the first they saw or in any manner communicated with one another was the day upon which they were put upon their trial."

Answer: "That article five of the petition is admitted."

"9. Your petitioner Walter English was arrested about one-thirty o'clock, P. M. on November 10, 1956, near Rocky Mount, North Carolina, together with the other two defendants, Brooks Wheeler and Myrtle Oliver; he was then put in the Rocky Mount City Jail; he was stripped of all money he had—about $140; he was then carried to the Onslow County Jail where he stayed for several days; immediately upon getting there he asked to use the telephone to call his sister, Mrs. Frances Crabtree, in Washington, D. C.; his request was denied; he then asked for paper to write a letter; the jailer said he had order from the Sheriff not to permit your petitioner to communicate with anyone; he was then taken to Burgaw and put in the Pender County Jail where he stayed about two weeks; he again asked to be allowed to communicate with his sister in Washington; the jailer thereupon told your petitioner that he could not communicate with anyone; he again asked for paper and was again refused; he was then taken back to Jacksonville where he stayed for about two weeks; he was then carried back to the Pender County Jail; Mr. Thomas, the SBI officer, saw your petitioner while he was there; Your petitioner gave him the name of certain witnesses in Raleigh and asked him to interview these witnesses for him; Mr. Thomas said that he would do so, but he failed to interview them; your petitioner was later carried back to Jacksonville for trial; the first time he heard from his co-defendants was when he was brought to the Court Room for trial; your petitioner's money had been taken from him; he had not been allowed to communicate with his family; he went to trial penniless and was unable to secure counsel."

Answer:

"9. That as to the allegations contained in Article 9 of the petition your respondent is without sufficient information to form a belief and therefore the same is neither admitted nor denied."

The petitioners testified according to and in amplification of the allegations in the petition. They offered corroborating evidence by Harry Karagelen, the hatter, and by the manager and clerk of the Andrew Johnson Hotel in Raleigh and supporting exhibits from their records tending to show that English, alias Geno, was in Raleigh some time between 3:00 p. m. and 6:00 p. m. on November 9th.

On the hearing, the State called as witnesses J. P. Thomas, SBI agent, and Herbert Taylor, the Onslow County jailer. Thomas testi-

fied: "Geno gave me the name of Harry who operated a dry clean-
ing place in Raleigh. I did not try to find him; didn't think there
was any such person; stated on former trial that I was tied up with
other matters and was too busy to look for Harry's place."

Taylor testified: "I am jailer in Jacksonville; defendants have
been confined in Jacksonville jail at different times; don't know
whether any attorney talked to them or not. Miss Oliver made a tele-
phone call to her sister; can't say whether before or after the trial."
The State offered transcript of the evidence taken at the trial.

The court, therefore, had before it the verified petition, supporting
affidavits, and evidence of witnesses, tending to support, in part at
least, the petitioners' allegations. On the other hand, the court had
the verified answer of the solicitor, the testimony of Thomas and
Taylor, and the transcript of the State's evidence at the trial. At the
conclusion of the hearing the court entered findings of fact, conclu-
sions of law, and judgment as follows:

"1. The petitioners were arrested near Rocky Mount, North
Carolina, on November 10, 1956, and subsequently charged with
the armed robbery of Myrtle Conway in Onslow County about
4:00 o'clock P. M. on November 9, 1956. A Bill of Indictment was
returned against the defendants at the January Term 1957 of Ons-
low County Superior Court charging the defendants jointly with
the commission of said offense which is defined by G.S. 14-87. They
were tried, convicted, and sentenced at said term of Court and are
now imprisoned in the State Penitentiary as the result of said trial.

"2. At the time of the arrest of the petitioners the officers took
from them their money and other personal belongings.

"3. Petitioners being unable to give bond, were imprisoned con-
tinuously from the time of their arrest until their trial. They were
kept in separate jails and not allowed to communicate with one
another. They were moved from jail to jail several times between
the date of arrest and the date of trial.

"4. Petitioners were not denied the right to communicate with
counsel nor were they denied the right to communicate with their
relatives, but J. P. Thomas, an agent of the State Bureau of Inves-
tigation, was requested by petitioner, Brooks Wheeler to contact
his brother, and although he promised to do so, did not contact him.

"5. Petitioners were not denied the right to summon witnesses for
their defense. They did not request that any witness or witnesses
be summoned on their behalf.

"6. Petitioner Walter English asked said J. P. Thomas to check
on 'a dry cleaners in Raleigh where I had clothes' but said Thomas
did not do so. Harry Karagelen, who operated a hat cleaning service

in Raleigh, North Carolina, would have testified that on November 8, 1956, a man, giving his name as Tony Geno, left a shirt, a suede jacket, and a pair of pants with him to be cleaned and returned the next afternoon, to the best of his recollection, at about 2:30 or 3:00 p. m. to get them and they were not ready to deliver.

"7. Petitioner Walter English told J. P. Thomas when interviewed on November 12, 1956, that he and the other two petitioners left Raleigh some time during the afternoon of Friday, November 9, 1956, and went to Columbia, South Carolina, and suggested that police officers in Columbia, South Carolina, and people at Club Diamond near that City might remember seeing them.

"8. None of the petitioners were represented by counsel at their trial at the January Term 1957 of Onslow Superior Court. None of them requested the presiding judge to appoint counsel for defense. None of them made any complaint to the Court at that time that they had been denied the privilege of communicating with counsel or relatives or that they had not been given an opportunity to have witnesses summoned for their defense.

"9. All the petitioners are mature adult persons and petitioners English and Wheeler have been tried in Court for serious crimes several times before and upon conviction thereof have served prison sentences.

"Upon the foregoing facts the Court concludes as a matter of law that none of the petitioners have been deprived of any rights guaranteed to them under the Constitution of North Carolina, or under the Constitution of the United States.

"NOW, THEREFORE, it is by the Court ORDERED, ADJUDGED, AND DECREED that petitioners are not entitled to any relief under the provisions of G.S. 15-217 et seq., and further that the petition be dismissed. This 8th day of March, 1958."
The petitioners excepted and appealed.

*Malcolm B. Seawell, Attorney General, T. W. Bruton, Ass't. Attorney General, for the State.*
*John W. Hinsdale for petitioners, appellants.*
*A Jeffery Bivins for Myrtle Oliver, appellant.*

HIGGINS, J. By this proceeding the petitioners seek a new trial under the North Carolina Post Conviction Hearing Act, claiming that during imprisonment and trial their fundamental rights under Article I, Sections 11 and 17, Constitution of North Carolina, and under the Due Process Clause of the 14th Amendment to the Constitution of the United States had been denied them.

The Post conviction Hearing Act is not a substitute for appeal. It

cannot be used to raise the question whether errors were committed. in the course of the trial. The inquiry is limited to a determination whether the petitioners were denied the right to be represented by counsel, to have witnesses, and a fair opportunity to prepare and to present their defense. *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513; C.J.S. 16A Sec. 579, p. 617 et seq., and cases cited; Am. Jur. 12, Sec. 573, p. 267. The question whether these rights have been denied, is one of law. *State v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778; *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520; *State v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322; *State v. Whitfield,* 206 N.C. 696, 175 S.E. 93; *State v. Garner,* 203 N.C. 361, 166 S.E. 180.

While this Court is bound by the findings of fact made by the court below if supported by evidence, it is not bound by that court's conclusions of law based on the facts found. *Miller v. State, supra.*

The petitioners were arrested together the day following the robbery and after arrest were deprived of all money and other personal effects. According to the court's finding, "being unable to give bond (petitioners) were imprisoned from the time of their arrest until their trial. They were kept in separate jails and not allowed to communicate with one another. They were moved from jail to jail several times between the date of the arrest and the date of their trial."

In Paragraph 9 the petitioner English alleges he was denied the right to phone or write his sister in Washington, D. C. "The jailer said he had orders from the sheriff not to permit your petitioner to communicate with anyone." The solicitor "neither admitted nor denied." The jailer and the sheriff did not answer. The only evidence in the record that either petitioner actually got a message beyond the confines of the jail was that Oliver was permitted to talk to her sister by phone and the jailer admitted he did not know whether that was before or after the trial. The attempt by Wheeler to get a message to his brother in Wake Forest by SBI Agent Thomas was thwarted by the failure of Thomas to deliver the message. The attempt of English to identify the hatter produced nothing except two unfulfilled promises made by SBI Agent Thomas to look for him.

So the court's conclusion, "Petitioners were not denied the right to communicate with counsel nor were they denied the right to communicate with their relatives," is not supported by evidence. All affirmative evidence is to the effect that the opportunity was denied them. The rights of communication go with the man into the jail, and reasonable opportunity to exercise them must be afforded by the restraining authorities. In this connection attention is called to the provisions of G.S. 15-47: ". . . it shall be the duty of the officer making the arrest to permit the person so arrested to communicate with counsel and

friends immediately, and the right of such persons to communicate with counsel and friends shall not be denied." The denial of the opportunity to exercise a right is a denial of the right.

This Court realizes the difficulty attending any attempt to lay down and apply general rules dealing with such constitutional rights as are here involved. After all, each case must be decided on its own facts. In this particular setting, however, we think the court's finding of fact No. 3 is sufficient within itself to require that the case go back for a new trial. The State has elected to prosecute the three defendants in a single bill of indictment containing one count charging a joint offense. The victim testified as to the identity of Wheeler and English as the actual perpetrators, and other witnesses offered testimony tending to show that the three defendants were together both before and after the offense. While the indictment does not contain a conspiracy count, nevertheless, we may assume the State emphasized the petitioners' associations together both before and after the robbery as proof they acted together in committing the offense. Such being the background, evidence tending to show English was in Raleigh at the time of the offense would tend materially to weaken the State's case.

In the light of the foregoing circumstances, it follows as a matter of course the three petitioners were entitled to confer together as to their joint defense to the joint charge. Each was entitled to know what facts and circumstances the others could contribute to the defense. The record shows this right was denied. Each was given a separate hearing. The bill of indictment charging a joint offense was not returned until the term at which the trial took place. Nothing in the record indicates either defendant was advised of the joint charge until the case was called for trial. The court's finding No. 3 furnishes proof that the right to prepare for trial was denied. Due process of law implies the right and opportunity to be heard and to prepare for the hearing. *Holding v. Hardy,* 169 U.S. 366, 16 C.J.S., p. 578; *Mooney v. Holohan,* 294 U. S. 103.

Did the petitioners waive their rights by failing to complain to the court at the time of arraignment? Neither had been "allowed" to communicate with the others since their arrest two months previously. As they were led into court they were confronted by the State's prosecutor, ready for trial with his investigators and witnesses. Each defendant was in ignorance of what the others were able to offer in defense. Each was without an attorney, relative, or friend. It is scarcely surprising, therefore, that all were overwhelmed at the prospect of facing trial upon a charge which carried the same maximum punishment as murder in the second degree. Even though they were mature

persons and the men not altogether strangers to court proceedings, nevertheless, their failure at the time of arraignment to complain to the court was not a waiver of their constitutional rights.

We suggest that it is the duty of officers of the law, upon request, to make a reasonable effort to notify relatives of persons held in jail charged with serious offenses. Likewise, persons jointly charged have the constitutional right, as a part of their trial preparations, to confer together as to their joint defense. This right is neither withdrawn nor abridged by reason of fear on the part of the investigating officers that from a conference they may evolve a bogus defense.

We have admiration and respect for the able and painstaking judge who conducted the post conviction hearing in this case. However, on the record as it comes to us we are unable to join in the view that the petitioners' constitutional rights have been afforded them. We think the records and his own findings require decision to the contrary. For the reasons herein set forth, it is ordered that the verdict and judgment be set aside and that there be a

New Trial.

PARKER, J., not sitting.