STATE v. FLOYD GRAVES AND DeFOREST SNIPES.

(Filed 14 January, 1960.)

**1. Criminal Law § 173—**

The Post Conviction Hearing Act may not be used as a substitute for appeal but its purpose is to provide procedure under which a petitioner may initiate an inquiry as to whether there was a substantial denial of his constitutional rights in the original criminal action in which he was convicted and whether a different result would likely ensue had he not been denied such rights, the burden of showing the affirmative of both these propositions being upon petitioner.

**2. Same—**

The findings of fact of the trial court in a post conviction hearing are binding upon petitioner if they are supported by evidence.

**3. Same—**

Upon review by *certiorari* of the judgment entered preceedings upon the Post Conviction Hearing Act, the Supreme Court is not limited to the facts found by the trial judge but may consider as well undisputed facts disclosed by the evidence.

**4. Constitutional Law § 31—**

A defendant's right of confrontation includes the right to a fair opportunity to confront the accusers and witnesses with other testimony, which embraces the right to an opportunity to have his witnesses in court, to examine them in his behalf, and to prepare and present his defense, which right of confrontation must be afforded not only in form but in substance. Constitution of N. C., Art. I, sec. 11.

**5. Indictment and Warrant § 1:    Criminal Law § 173—**

While a preliminary hearing is not an essential prerequisite to a finding of an indictment and while the failure to observe the provisions of G.S. 15-46 and G.S. 15-47 in regard to preliminary hearings, allowance of bail, informing the person arrested of the exact charge against him and permitting him to communicate with counsel and friends, may not under all circumstances result in a denial of constitutional rights, the failure to follow the provisions of the statutes must be given great weight in a hearing under the Post Conviction Hearing Act.

6. **Constitutional Law § 31: Criminal Law § 173— Findings and uncontroverted facts held to disclose a deprivation of petitioners' constitutional right of confrontation.**

   Findings and the uncontroverted evidence in a hearing under the Post Conviction Hearing Act disclosing that petitioners were arrested on a Sunday, that they were taken into custody for investigation, that no warrants were issued, no preliminary hearing held and no bail fixed, that the wife of one of them was refused the right to see him on Monday and was told to return at visiting hours on Wednesday, that petitioners had requested opportunity to use the telephone but no such opportunity had been afforded, that they were not informed of the exact nature of the crime against them or as to the time of trial until they were brought into court on the following Tuesday and the indictment read to them, and that the circumstances were such that petitioners and their families were justified in thinking up to that time that the matter was under preliminary investigation, *is held* to disclose a denial of petitioners' constitutional right of confrontation and a fair opportunity to prepare and present their defenses, since up until the time of trial petitioners and their families might well have thought that there was no urgency in obtaining witnesses in their behalf and employing counsel, and order dismissing the petition in the post conviction hearing must be reversed and the judgments in the original trial vacated.

CERTIORARI to review order of *McKinnon, J.,* June 1959 Criminal Term, of ALAMANCE.

Petitioners, DeForest Snipes and Floyd Graves, were jointly indicted and tried on charge of robbery with firearms (G.S. 14-87) at the December 1958 term of Alamance County, Hobgood, J., presiding. They entered pleas of not guilty. The prosecuting witness, R. A. McCauley, was the only witness for the State. The accused were not represented by counsel and offered no evidence. They were convicted and sentenced by the court, each of them, to "be confined to State Prison for not less than 15 years, nor more than 25 years." There was no appeal.

In May 1959 Snipes and Graves filed petitions for hearing under the North Carolina Post Conviction Hearing Act, G.S. 15-217, *et seq.,* for review of the constitutionality of their criminal trial.

The petitions alleged in substance the following: Petitioners were arrested and imprisoned without being afforded the right and opportunity to advise with and be represented by counsel. They were placed in separate cells, could not confer with each other and were not permitted to communicate with friends and relatives. No warrants were issued, petitioners were not given a preliminary hearing, no bail was set and no opportunity given to make bail. When petitioners were taken to the courthouse for trial they had no notice they were to be tried at that time and supposed they were to be given preliminary

hearing. They were not advised of the charges against them until the trial began. There were witnesses who would have given evidence establishing an alibi for both of them, but no opportunity was afforded for summonsing them. The trial was held in great haste. Petitioners were arrested Sunday night, indicted the following Tuesday morning, tried Tuesday afternoon and sentenced Wednesday morning. The court was advised by them that they had not been given opportunity to communicate with relatives and friends or employ counsel, but the trial proceeded notwithstanding. Petitioners are innocent and were at their respective homes when the alleged crime was committed and they request a new trial.

The Solicitor filed answer and denied the material allegations of the petition.

The hearing upon the petitions was had before McKinnon, J., at the June 1959 term. Graves was represented by counsel of his own choice and at his own expense. Prior to the hearing the court appointed counsel for Snipes. Evidence was offered by petitioners and the State. The Judge found facts and made his conclusions of law.

The findings of fact are paraphrased as follows: (1) Petitioners were arrested at 8:00 o'clock p.m. Sunday, 30 November 1958, taken to the home of prosecuting witness, identified by him as the persons who robbed him at 6:00 o'clock p. m. on the same day, and placed immediately thereafter in jail. (2) Petitioners, both before and after being placed in jail, were informed by the arresting officer of the charge against them but no warrants were issued; when they asked concerning bail they were told by the arresting officer that it would probably be set at $5000.00 and they thereafter made no request to be allowed bail. (3) Petitioners were placed in separate cells, about 18 feet apart, and could not confer privately but made no request to be permitted to do so; at 11:00 o'clock a. m. on Tuesday, 2 December 1958, they were placed in the same cell for the purpose of taking baths and remained together until taken to trial that afternoon. (4) They were not deliberately separated to prevent them from conferring but because of lack of accommodations at that time. (5) There is no evidence that they had a common defense or reason to confer with each other. (6) Petitioners were arrested in the presence of their families and relatives who knew the charges against them; Graves was permitted to make a telephone call Tuesday afternoon. (7) Petitioners did not request the arresting officer, jailer or any other officer for permission to communicate by telephone or otherwise with relatives, friends or attorneys, though they had opportunity to make such request; they did make such requests of a "trusty" or "run boy" who worked in the jail but no permission was granted (8) Neither peti-

tioner asked that witnesses be subpoenaed or contacted. (9) No officer inquired of petitioners if they desired to use the telephone or have witnesses subpoenaed. (10) There was no deliberate denial of the right to communicate with friends and relatives or have witnesses subpoenaed. (11) The grand jury returned the bill of indictment on the first or second of December; the trial was held on the afternoon of December 2d and charges were then read to petitioners and each entered a plea of not guilty; they did not request counsel, continuance, or witnesses; they did not testify; the trial was concluded December 3rd. (12) Snipes and Graves are 25 and 35 years of age respectively; each of them reached the seventh grade in school; each of them had been in jail a number of times before and Snipes had previously been charged with felonies; both of them "were familiar with procedures of arrest and jail and of the courts." (13) "That petitioners deny their guilt of the offenses charged and allege that they have witnesses whose testimony would tend to show their innocence; that Floyd Graves is now represented by counsel employed by his relatives and alleges that he could have employed counsel at the time of trial; that DeForest Snipes is not now able to employ counsel and counsel for the purpose of his petition has been appointed by the Court."

The court made the following conclusions of law:

"1. That neither petitioner has shown a substantial denial of any rights under the Constitution of the United States or of the State of North Carolina in the proceeding resulting in his conviction.

"2. That each petitioner is lawfully confined to the State's prison pursuant to the final judgment of the Superior Court for Alamance County rendered at December 1958 Criminal Term."

The court dismissed the petition and remanded petitioners to custody.

Petitioners applied to this Court for writ of *certiorari* and the writ was duly issued.

*Attorney General Seawell and Assistant Attorney General Bruton for the State.*

*W. G. Pearson, II, and George L. Bumpass for Petitioner Floyd Graves.*

*Spencer B. Ennis for Petitioner DeForest Snipes.*

MOORE, J. Petitioners maintain that in their arrest, imprisonment and trial at the December 1958 term of Alamance County they were denied certain fundamental rights secured to them by Article I, sections 11 and 17 of the Constitution of North Carolina and as a con-

sequence they have been deprived of their liberties without due process of law.

Petitioners invoked the North Carolina Post Conviction Hearing Act, Chapter 15, Article 22, General Statutes of North Carolina, sections 15-217 *et seq.* This Act is not a substitute for appeal. Accused had unqualified right to appeal. G.S. 15-180. The Act affords an opportunity to inquire into the constitutional integrity of a petitioner's conviction. *State v. Cruse,* 238 N.C. 53, 58, 76 S.E. 2d 320. The inquiry is whether there was a *substantial denial* of the constitutional rights of petitioners in the original criminal action in which they were convicted and whether a different result would likely have ensued had petitioners not been denied such rights. *State v. Hackney,* 240 N.C. 230, 237, 81 S.E. 2d 778; *Miller v. State,* 237 N.C. 29, 51, 74 S.E. 2d 513. The petitioners have the burden of showing the affirmative of these propositions. *State v. Hackney, supra,* at page 237.

The findings of fact of the Judge in a Post Conviction hearing are binding upon the petitioner if they are supported by evidence. *Miller v. State, supra,* at page 43. In the instant case the facts as found by the Judge are supported by evidence. But there are certain significant undisputed facts, not included in the Judge's findings, which we take to be true and consider in connection with the facts found. *State v. Hackney, supra,* at page 234.

The arresting officer testified that he informed Snipes' family at the time of the arrest that he was investigating a robbery and told Graves' wife, "I am taking him off and if he wasn't charged with anything I would bring him back." The officer also testified that as soon as petitioners were identified by the prosecuting witness they were placed in jail, no warrant was issued and bail was not fixed, that petitioners inquired about bail and he told them it would be about $5000.00 and thereafter neither of them asked that bail be fixed. He testified further that he advised petitioners of the charges against them and booked them for "robbery and assault." On Monday he interrogated Graves with the purpose of implicating a third party. He also stated that prosecuting witness, at his request, came to the jail Tuesday morning and looked at petitioners in a line-up.

R. A. McCauley, the prosecuting witness, testified that he went to the jail Tuesday morning about 10:00 o'clock and saw petitioners in a line-up. He stated: "I just wanted to see them again. I asked when the trial would be and they said they didn't know. . . . I didn't know when the trial would be." He further stated that petitioners were in separate cells when he went to the jail and that he testified

before the grand jury about 11:00 or 11:30 after he had been to the jail.

Lou Pearl Graves, wife of petitioner Graves, testified that after her husband did not return home Sunday night she went to the jail Monday morning and inquired of him and asked to be permitted to see him, that she talked to Mr. Hensley, the jailer, that Mr. Hensley told her that Graves was charged with "attempted highway robbery and assault with a deadly weapon" and that his bond would probably be $10,000.00, that Wednesday was visiting day and she could see him on that day between 2:00 and 4:00 p. m.  She stated that she phoned the jail on Tuesday and Wednesday and on Wednesday was told that her husband had already been tried.  She testified she could have arranged bond if it had been fixed and could have employed an attorney but did not employ a lawyer immediately for she thought "they would sooner or later give him bond."  Mr. Hensley, when asked about her visit to the jail, stated: "I don't recall it."  He was then asked: "But you don't deny it?"  He answered: "No."  He stated that the visiting hours at that time were from 2:00 to 4:00 o'clock on Sundays and Wednesdays, but persons having business with prisoners could see them on other days.

Graves' sister-in-law worked for Sheriff Cole.  The Sheriff testified that he did not tell her Graves was in jail until Tuesday when she made inquiry, stating she had heard that he was in jail the night before.

Both petitioners testified that when they were taken from the jail Tuesday afternoon and carried to the courtroom they thought they were to be given a preliminary hearing until the Solicitor read the bill of indictment and asked them to plead.  There is no evidence that anyone told the petitioners or any members of their families before the trial when the trial was to be or that there would be a trial at the term then in progress.  There is nothing to indicate that the officers or the prosecuting witness knew when the trial was to be.

While the jailer was testifying the following exchange took place between him and the Solicitor:

"Q.  I will ask you if it isn't customary every term of court to try every person who is in jail if possible?

"A.  Yes.

"Q.  And you are worrying me from Monday morning until Friday to get these people out of jail and that is what I do?

"A.  Yes.

"Q.  That has been the practice ever since you have been here and I have been here?

"A.  Yes, that has been the practice, and it has been appreciated."

Snipes testified: "I told the Judge I didn't know what I was being tried for, no warrant was read to me, and he said they didn't have to serve no warrant, that they were trying me under a bill of indictment." At the hearing before Judge McKinnon each of the petitioners named witnesses who would have testified in their behalf and given evidence tending to prove alibis. Snipes testified that he had wanted to call his boss to get bail for him. Graves testified that he told the officer he was at home when the alleged crime was committed. He also stated that at the trial "I told them I did not have a chance to notify, either get an attorney or notify my people, or nothing."

Neither of the petitioners was represented by counsel at the trial, none of their relatives were present and they had no witnesses.

A careful consideration of the foregoing undisputed facts in connection with the facts found by the court leads to several inescapable conclusions. The families and relatives of petitioners at the time of the arrests were fully justified in concluding that petitioners had been taken into custody for investigation. And it certainly is not unusual for an investigation to last two days. When Graves' wife was refused the right to see him on Monday and was told to return at visiting hours on Wednesday, she had every reason to believe he would be there at that time and to delay action in his behalf until she had opportunity to talk to him. There was every reason for petitioners to suppose up to the moment of their trial that the investigation had not been completed. Graves was interrogated on Monday with reference to the participation of a third party in the alleged offense. He and Snipes were placed in a line-up on Tuesday morning to be again viewed by the prosecuting witness. The prosecuting witness himself, even then, about three and one-half hours before the trial, did not know when the trial would be. No one ever advised the petitioners they were to be tried Tuesday afternoon. No warrants had been issued, no preliminary hearing had been held, no bail fixed. They had requested opportunity to use the telephone, but no such opportunity had been afforded. They may well have supposed that they would not be permitted to communicate with friends and relatives until the investigation had been completed. Graves knew, from his interrogation by the arresting officer, that the officer was attempting to involve others. That petitioners were taken unawares when hastily placed upon trial Tuesday afternoon cannot be doubted. Had they been notified of the impending trial they, at least, would have known the urgency of securing attendance of witnesses and employing counsel. But in view of the circumstances, their failure to act in this respect cannot be considered against them.

They had every reason to suppose there was ample time to prepare for trial.

It is the law in this State that "Every person arrested without warrant shall be either immediately taken before some magistrate having jurisdiction to issue a warrant in the case, or else committed to the county prison, and, as soon as may be, taken before such magistrate, who, on proper proof, shall issue a warrant and thereon proceed to act as may be required by law." G.S. 15-46. And G.S. 15-47 provides that "Upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State, with or without warrant, it shall be the duty of the officer making the arrest to immediately inform the person arrested of the charge against him, and it shall further be the duty of the officer making said arrest, except in capital cases, to have bail fixed in a reasonable sum, and the person so arrested shall be permitted to give bail bond; and it shall be the duty of the officer making the arrest to permit the person so arrested to communicate with counsel and friends immediately, and the right of such persons to communicate with counsel and friends shall not be denied. Provided that in no event shall the prisoner be kept in custody for a longer period than twelve hours without a warrant. Any officer who shall violate the provisions of this section shall be guilty of a misdemeanor and shall be fined or imprisoned, or both, in the discretion of the court."

While there are circumstances under which a failure to observe the foregoing provisions may not affect constitutional rights, yet where an offense as serious as robbery with firearms is charged, such failure must be given great weight in a hearing under the Post Conviction Hearing Act. It is true that a preliminary hearing is not an essential prerequisite to the finding of an indictment and our Constitution does not require it. But "in all criminal prosecutions, every person charged with crime has the right to be informed of the accusation and to confront accusers and witnesses with other testimony . . ." North Carolina Constitution, Article I, section 11. Of this right of confrontation he cannot lawfully be deprived, and this includes the right of a fair opportunity to confront the accusers and witnesses with other testimony. "The word *confront* secures to the accused the right to have his witnesses in court, and to examine them in his behalf. . . . It further secures to the accused a fair opportunity to prepare and present his defense, which right must be afforded him not only in form but in substance." *State v. Hackey, supra,* at page 235. "Denial of an opportunity to exercise a right is a denial of the right . . . Due process of law implies the right and opportunity to be heard and to prepare

for the hearing." Failure to complain at the time of arraignment in court is not a waiver of these rights. *State v. Wheeler,* 249 N.C. 187, 193, 105 S.E. 2d 615.

Under the circumstances in the instant case we hold that petitioners were denied their constitutional right of confrontation, the fair opportunity to prepare and present their defense. It is observed that these petitioners were tried on the second day of the term. It could have inconvenienced the court very little to have inquired as to their readiness for trial at the time of arraignment and set the case for a time later in the term. There is considerable doubt that petitioners were properly advised of the charges against them prior to the trial. There is considerable difference between "robbery and assault" or "attempted highway robbery and assault with a deadly weapon" and robbery with firearms. The failure of petitioners to testify at the trial is understandable. Each of them had criminal records. They undoubtedly thought it best to remain off the witness stand and thereby avoid the effect of having their records considered against them by the jury. This emphasizes all the more the importance to them of having the benefit of the testimony of their witnesses.

We do not suggest that an accused may be less than diligent in his own behalf in preparing for trial. He may not place the burden on the officers of the law and the court to see that he procures the attendance of witnesses and makes preparation for his defense. But the officers and court have a duty to see that he has opportunity for so doing. Where, as here, defendants have no notice that trial is imminent and all the circumstances indicate that the case has not progressed beyond the investigation stage and they and their families, relatives and friends have been given no oportunity to communicate and confer, and defendants have had no opportunity to confer privately with each other as to what each may be able to contribute to the defense, until a short time before the unexpected trial, and available witnesses have not been subpocnaed, trial under these circumstances is a deprivation of due process of law.

There has been no suggestion that the law enforcement officers, the court or court officials have acted in bad faith or have at any time had intent to deprive petitioners of their constitutional rights. Indeed, the distinguished and able Judge and Solicitor who officiated at the trial are well known for their zeal for justice and fair administration of the law and they are to be commended for strict attention to duty and prompt disposition of pending causes. But a deprivation of fundamental constitutional rights is none the less

serious that it occurred through inadvertence rather than wrongful purpose.

There is no rule of law that an accused may not be tried at the same term the bill of indictment is found. Capital cases are, under certain circumstances, an exception. G.S. 15-4.1. *State v. Hackey, supra,* at page 235. But the more speedily a case is brought to trial, after the offense is committed or arrest is made, the greater the duty of the courts to determine whether or not the accused has had a fair opportunity to prepare for trial.

There may well be a different result upon a retrial.

The order in the Post Conviction hearing is reversed, the judgments in the original trial are vacated and a new trial is ordered.

New trial.