EDWARD W. BRANCH, JR., v. STATE.

(Filed 22 March, 1967.)

**1. Criminal Law § 173—**

A post conviction hearing is not a substitute for appeal, and upon such hearing the inquiry is limited to the question of whether there was a substantial denial of the constitutional rights of petitioner in the original criminal action.

**2. Criminal Law § 159—**

Assignments of error not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**3. Criminal Law § 173—**

The findings of fact of the trial court in a post conviction hearing are binding upon petitioner if they are supported by competent evidence.

BRANCH *v.* STATE.

**4. Constitutional Law § 31—**

Petitioner and another were jointly charged with murder. Petitioner was not tried until some ten months after his arrest, and was represented by counsel employed by his family at the preliminary hearing and at the trial. At no time did petitioner's attorney request a conference with petitioner's codefendant or a conference between the codefendants. *Held:* The record does not sustain petitioner's contention that he was denied the right to confer with his codefendant in private.

**5. Constitutional Law § 33—**

Since an accused's fingerprints may be taken, notwithstanding objection on his part and notwithstanding advice of counsel, there can be no violation of defendant's constitutional rights in taking his fingerprints prior to the employment of counsel by him and prior to any advice to him concerning his constitutional rights.

**6. Criminal Law § 173—**

In a post conviction hearing, the burden is upon petitioner to show a denial of some right guaranteed to him by the Constitution of North Carolina or by the Constitution of the United States in the trial or investigatory procedures resulting in his conviction.

ON *certiorari* to review judgment entered by *Froneberger, J.,* at the March 1966 Criminal Session of BURKE.

On 22 October 1964, the petitioner was convicted of murder in the first degree, the jury recommending mercy. Pursuant to this verdict he was sentenced to imprisonment for life. Notice of appeal to this Court was given, but was withdrawn the following day and no appeal to this Court was perfected. He was represented prior to and at his trial by able and experienced counsel selected and employed by his family.

On 11 February 1965, the petitioner filed in the superior court a petition for post conviction review of the above judgment, under the provisions of the Post Conviction Hearing Act, G.S. 15-217, *et seq.* The petition was supplemented by a further document entitled "Bill of Particulars," setting forth twelve "questions presented for review." The superior court appointed petitioner's present counsel to represent him in the post conviction proceeding.

At the hearing of the petition in the superior court, the petitioner was represented by his court appointed counsel. The petitioner presented evidence consisting of his own testimony and that of Sheriff David Oaks, several members of his family, his codefendant at the original trial, and two fellow prisoners in the jail in which he was confined prior to trial. He also introduced in evidence certain subpoenas for witnesses and the entire record and transcript of the evidence at the original trial. A complete transcript of the post conviction hearing, including the said exhibits and transcript of the original trial, are included in the present record.

BRANCH *v.* STATE.

The judgment of the superior court sets forth in detail its findings of fact. Upon these the court concluded that the petitioner's constitutional rights were not violated, that he had a fair and free trial, that his allegations are without merit, that he is properly confined in the State Prison System and that he should be remanded to the custody of the Director of the Prison System to complete the service of the sentence so imposed upon him. The court thereupon ordered that the relief sought by the petitioner in the post conviction proceeding be denied and that the proceeding be dismissed. We granted *certiorari* to review this judgment.

The findings of fact set forth in the judgment of the superior court include the following:

"[T]he State did not suppress any evidence in the trial of the said case; that all subpœnas issued by the defendant were either served or a due and diligent search made for all witnesses to be available at the trial. * * * [T]he petitioner was not denied means of communication with David Secrest [the codefendant]. * * * [T]he petitioner Branch employed the law firm of Patton, Ervin and Starnes to represent him and that they did not request an interview with David Secrest; * * * David Secrest did not request or want to confer with Edward Branch and neither did his attorneys request the same * * *. David Secrest was cross examined at length under oath during the trial of the petitioner by his competent and highly skilled attorneys and that his testimony along with other testimony in the record was considered by the jury and the jury convicted Edward Branch of murder in the first degree. * * * [T]he petitioner was convicted on evidence competent in the record and that there was supporting substantial evidence over and beyond the testimony given by David Secrest, an alleged accomplice * * *. David Secrest voluntarily testified to the facts as set forth in the record * * * without any duress, fraud, promise of reward or any other inducement whatsoever. * * * [T]he petitioner Branch did not request, through his attorneys for himself individually, to communicate or talk directly with David Secrest. * * * The court further finds as a fact that any statement made by David Secrest, either in writing or orally, was freely and voluntarily given and that David Secrest under oath in February, 1966, at the time of this hearing reiterated the truthfulness of the same and the fact that he freely and voluntarily made oral statements and written statements. * * * Edward Branch through his attorneys and himself personally employed the law firm of Pat-

ton, Ervin and Starnes and the Honorable Russell Berry to represent him prior to preliminary hearing * * * that they were present at the preliminary hearing * * * and that he had highly skilled and competent attorneys at every hearing involving this trial. * * * That on any time Edward Branch was talked to by any officer of the law after his original arrest and employment of counsel immediately thereafter, that his counsel were advised of any conference that would be had and were present if they desired in all proceedings and that no confession or statement of any nature whatsoever was offered in evidence or obtained from Edward Branch. * * * [T]hat there has been no violation of any constitutional rights of the petitioner, Edward Branch, and that he has not offered any evidence or [sic] any of the alleged twelve (12) questions presented for discussion that would in any manner warrant him a new trial and no evidence was offered to show that he was prejudiced in any manner whatsoever; that he was given a full, complete, fair trial, free of error, ably represented by very highly skilled and competent attorneys in Western North Carolina at his October, 1964 trial in the Burke County Superior Court."

*Attorney General Bruton and Staff Attorney Brown for the State. Simpson & Simpson for defendant appellant.*

LAKE, J. Upon the pronouncement of sentence upon him at the conclusion of his trial on the charge of murder, the petitioner, through counsel then representing him, gave notice in open court of appeal to this Court. On the following day he withdrew this notice of appeal in writing signed by him. At the post conviction hearing, he testified that no officer coerced him into signing this or any other paper or asked him to withdraw his appeal, but he and his family decided to withdraw it upon advice of his trial counsel. He also testified at the post conviction hearing that, at the time of his trial on the murder charge, his then counsel advised him not to take the witness stand but told him he could do so if he wanted to, and that he did not testify because he felt it would not be advisable for him to do so.

The procedure established by the Post Conviction Hearing Act, G.S. 15-217 to 15-222, is not a substitute for an appeal from the judgment entered at the trial of the criminal charge. *State v. Graves,* 251 N.C. 550, 112 S.E. 2d 85; *State v. Wheeler,* 249 N.C. 187, 105 S.E. 2d 615. Moore, J., speaking for the Court in the *Graves* case, said:

"The inquiry is whether there was a *substantial denial* of the constitutional rights of petitioners in the original criminal action in which they were convicted and whether a different result would likely have ensued had petitioners not been denied such rights."

In his brief the petitioner brings forward and argues only these two assignments of error: (1) His constitutional rights were violated in that he was denied the right and opportunity to confer, prior to trial, with his codefendant, David Secrest; (2) his constitutional rights were violated in that the arresting officers took his fingerprints while he was in custody, before he had an opportunity to employ counsel and without advising him of his constitutional rights. At the trial the State introduced testimony comparing these fingerprints with those found on objects at the scene of the crime.

Exceptions to the judgment of the superior court, and assignments of error based thereon, which are not brought forward in the appellant's brief and in support of which his brief cites no argument or authority, are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court. We have, nevertheless, reviewed the entire record before us, including the transcript of the hearing upon the petition for post conviction review and the transcript of the trial on the criminal charge, and have considered each exception by .the petitioner to the judgment entered at the post conviction hearing, and to the findings of fact and conclusions therein. Each such finding of fact made by the superior court is amply supported by evidence in the record. Each such finding is, therefore, binding upon this Court. *State v. Wheeler, supra*. The court's conclusions of law based upon its findings of fact are subject to our review. We have examined each such conclusion and find no error therein.

The ultimate questions are: (1) Did the petitioner have a fair opportunity, prior to being placed on trial, to prepare his defense against the charge? (2) Did the State procure his conviction by the use of trial or investigatory procedures forbidden by the Constitution of North Carolina or by the Constitution of the United States? In applying these tests to the record before us, we must begin with the assumption that the petitioner is innocent of the offense with which he is charged and consider whether the procedures used would expose an innocent man to unreasonable danger of conviction.

In each of the above cited cases, this Court reversed a judgment entered upon a post conviction hearing and ordered a new trial for the reason that the defendants therein were not allowed, prior to trial, to confer with their respective codefendants in preparation of their defenses. In *State v. Wheeler, supra*, this Court said, "The

rights of communication go with the man into the jail, and reasonable opportunity to exercise them must be afforded by the restraining authorities." In that case the facts were these:

> "The petitioners were arrested together the day following the robbery and after arrest were deprived of all money and other personal effects. * * * They were kept in separate jails and not allowed to communicate with one another. They were moved from jail to jail several times between the date of the arrest and the date of their trial. * * * As they were led into court they were confronted by the State's prosecutor, ready for trial with his investigators and witnesses. Each defendant was in ignorance of what the others were able to offer in defense. Each was without an attorney, relative, or friend."

In *State v. Graves, supra,* the petitioners were indicted jointly for robbery. The alleged robbery occurred Sunday afternoon; they were arrested that night and tried the following Tuesday afternoon. This Court said:

> "Neither of the petitioners was represented by counsel at the trial, none of their relatives were present and they had no witnesses. * * * Where, as here, defendants have no notice that trial is imminent and all the circumstances indicate that the case has not progressed beyond the investigation stage and they and their families, relatives and friends have been given no opportunity to communicate and confer, and defendants have had no opportunity to confer privately with each other as to what each may be able to contribute to the defense, until a short time before the unexpected trial, and available witnesses have not been subpœnæd, trial under these circumstances is a deprivation of due process of law."

In contrast, the present record shows:

Branch was arrested at the home of his grandmother, with whom he lived, and while she and other relatives were present. His grandmother and other relatives visited him in jail. They employed attorneys to represent him. At the preliminary hearing he was represented by all three of his attorneys, and a transcript of this hearing was available. Secrest, the codefendant, was arrested at substantially the same time. Neither requested permission to talk to the other. Secrest was tried first and, upon his plea of guilty, was sentenced to life imprisonment. Branch was then brought to trial and Secrest testified as a witness for the State. At the post conviction hearing, the sheriff testified that the prisoners were kept separated for the

safety of Secrest. Secrest testified that he had been threatened by Branch and had no desire, prior to their trials, to confer with him. The trial which resulted in Branch's conviction was not until nearly ten months after the employment of his counsel. In the interval, the officers carried Branch to the offices of his attorneys for conferences whenever requested to do so. At no time did Branch's attorneys request a conference with Secrest or a conference between Secrest and Branch.

The circumstances disclosed in this record are completely different from those in the *Wheeler* and *Graves* cases. Under these circumstances, it cannot be said that confining Branch and Secrest in separate cells, without opportunity to confer with each other privately, deprived Branch of a fair opportunity to prepare his defense. This procedure by the State did not deprive Branch of his liberty without due process of law and violated no other right granted to him by the Constitution of this State or by the Constitution of the United States.

There is no merit in the petitioner's contention that his constitutional rights were violated in that his fingerprints were taken while he was in custody, before he had opportunity to employ counsel and without his being advised of his constitutional rights and that, at his trial, the State was permitted to introduce evidence comparing the fingerprints so taken with fingerprints found upon objects at the scene of the crime. In *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104, this Court sustained the admission in evidence of a comparison of a bare footprint taken from the defendant, while in custody, with a footprint found at the scene of the crime. Although the footprint taken from the defendant in that case was taken with his consent, the Court, speaking through Ervin, J., said:

> "But the prisoner's standing would not be bettered a whit if the record did in fact disclose that he had furnished his footprint to the State under compulsion. The point in principle is decided against the prisoner in the following North Carolina cases: *S. v. Riddle,* 205 N.C. 591, 172 S.E. 400, * * * *S. v. Graham,* 74 N.C. 646, 21 Am. Rep. 493, and *S. v. Thompson,* 161 N.C. 238, 76 S.E. 249, * * * *S. v. Garrett,* 71 N.C. 85, * * *. These North Carolina cases are in accord with well considered decisions in other jurisdictions to the effect that the constitutional privilege against self-incrimination is not violated by the introduction of evidence of fingerprints to identify the accused, even where the fingerprints of the accused are obtained by coercion."

In the very recent case of *Schmerber v. California,* 384 U.S. 757,

86 S. Ct. 1826, 16 L. ed. 2d 908, the Supreme Court of the United States held that there was no violation of rights granted by the Constitution of the United States in taking, over objection, blood from the body of one charged with driving a motor vehicle under the influence of intoxicating liquor, analyzing the same and permitting the state to offer evidence of the result of such analysis. In reaching that conclusion the Court, speaking through Mr. Justice Brennan, said:

"[B]oth federal and state courts have usually held that it [the protection against self-incrimination] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture."

In *Holt v. United States*, 218 U.S. 245, 31 S. Ct. 2, 54 L. ed. 1021, the Supreme Court of the United States, speaking through Mr. Justice Holmes, said:

"[T]he prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of a use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."

To the same effect, see: *United States v. Kelly*, 55 F. 2d 67, 83 A.L.R. 122; 8 Wigmore on Evidence (McNaughton's Revision), § 2265; Annot., 28 A.L.R. 2d 1115, 1137.

Since the fingerprints of the petitioner could have been taken while he was in custody and against his will, even though his counsel had been present and had advised him not to assent thereto, see *Schmerber v. California, supra,* there was no violation of his rights in the taking of these fingerprints prior to his employment of counsel and prior to any advice to him concerning his constitutional rights.

The record of the petitioner's trial on the criminal charge discloses that no statement made by him while in custody was offered in evidence. The transcript of the post conviction hearing shows that from the time of his arrest to the conclusion of his trial the petitioner, when interrogated by the officers, refused to make any statement whatever except that he had no statement to make.

In this proceeding, the burden is upon the petitioner to show a

denial of some right guaranteed to him by the Constitution of North Carolina or by the Constitution of the United States in the trial or investigatory procedures resulting in his conviction. The petitioner has failed to do so.

Affirmed.