UNITED STATES ex rel. Samuel
TAYLOR

v.

Frederick REINCKE, Warden Connecticut State Prison.

Civ. A. No. 10102.

United States District Court
D. Connecticut.

Jan. 25, 1964.

Jacob Zeldes, Bridgeport, Conn., for petitioner.

Joseph T. Gormley, Jr., Asst. State's Atty., Bridgeport, Conn., for respondent.

BLUMENFELD, District Judge.

A petition for a writ of habeas corpus was submitted October 23, 1963 by Samuel Taylor, a state prisoner, pro se. On the same date, permission to proceed in forma pauperis was granted. An order to file a written return to show cause why the writ should not be granted and for a hearing limited to arguments thereon, without the necessity of producing the state prisoner, was issued. When the exhibits introduced at the hearing plus the state court's habeas corpus file, which this court called for and received, disclosed a tangled web of the petitioner's prior pro se efforts to perfect an appeal and to obtain the assistance of counsel, this court appointed counsel to represent him. By order filed December 13, 1963,

a full hearing was ordered for December 30, 1963, which was continued to January 3, 1964.

### Prior Proceedings

After a trial to the Superior Court at which a codefendant, Gause, was also being tried to a jury, Taylor was convicted under the laws of the State of Connecticut for the crime of furnishing drugs to minors (Conn.Gen.Stat., § 19–267 (1958)) [1] upon an information alleging that he "did aid and abet one Joseph Gause to sell, exchange and give a certain narcotic drug, namely heroin, to * * * a minor of the age of 20 years. * * * " On May 27, 1958 he was sentenced to serve a term of not less than twenty nor more than twenty-two years in the Connecticut State Prison at Wethersfield. At the trial he was defended by paid counsel.

On June 7, 1958 Edward G. Burstein, new counsel for Taylor, paid the Clerk $61.00 and filed an appeal to the Supreme Court of Errors, together with a request for an extension of time to file a draft finding. Two additional motions extended the time for the draft finding until September 2, 1958.

On October 4, 1958 counsel filed with the Superior Court an original and two copies of a withdrawal of appeal.

On August 26, 1958, petitioner, before the expiration date for filing the draft finding, wrote the official court reporter requesting "a further extension of time" in which to appeal. In response, by letter dated the day after petitioner's conference with his counsel, he was informed by the Superior Court Clerk to consult his attorney.

The first word he had that the appeal had actually been withdrawn was by letter from the Superior Court dated November 4, 1958, a month after the withdrawal of the appeal form had actually been filed. In an attempt to perfect the appeal, petitioner, a little-educated layman, wrote without success to the Superior Court Clerk, the presiding Superior Court Judge, the Public Defender for Fairfield County, the Chief Justice of Connecticut, and an Associate Justice of the Supreme Court of Errors.

The Public Defender was disqualified from acting and felt that petitioner's private counsel had probably withdrawn his appearance rather than the appeal itself. The Chief Justice advised petitioner to "take this matter up with an attorney." The Associate Justice of the Supreme Court of Errors advised petitioner that there was nothing that could be done. The presiding criminal session Judge denied petitioner's November 18, 1958 request for permission to appeal in forma pauperis and for assignment of counsel because there was no appeal pending. This was done in open court, without petitioner being present.

■ Having come to the end of that road in his search for relief, the petitioner began anew by seeking a writ of habeas corpus in the state court. He made two claims. His petition recited one: He was denied the right to an appeal from his conviction. The other was raised at the hearing: He was denied the assistance of counsel on appeal. That petition was denied by a Memorandum of Decision filed November 16, 1962.[2] Under date of December 18, 1962, apparently acting pursuant to Conn.Gen. Stat., § 52–470 (1958) the Connecticut Chief Justice refused to permit petitioner to appeal from the denial of his petition. On a petition for writ of certiorari filed by petitioner himself to review the final habeas corpus judgment, the United States Supreme Court denied review on October 14, 1963. Taylor v. Connecticut, 375 U.S. 840, 84 S.Ct. 86, 11 L.Ed.2d 68. Having exhausted his state remedies and thereby having established beyond question the jurisdiction of this court, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), petitioner initiated the instant proceeding.

---

1. The act requires a minimum sentence of twenty years for a first offense.

2. Samuel Taylor v. Warden, State Prison, No. 131371, Superior Court, Hartford County, Ryan, J.

Since there is no way to distinguish between the issues raised in this proceeding from those which were heard and disposed of by the state court in a like proceeding, the question acutely posed is to what extent a federal district court is obliged or permitted to receive evidence with respect to facts underlying a state prisoner's claim for relief on habeas corpus where there has been a prior adjudication on the merits of the petitioner's allegations of deprivation of constitutional rights.

For the sake of clarity, a brief reference to the rules of jurisdiction applicable to this discrete problem is appropriate.

### The Constitutional Question

■ There is nothing tenuous about the constitutional deprivations alleged. It is established constitutional doctrine that a state which provides for an appeal from a criminal conviction is without power to deny a defendant that appeal or the assistance of counsel to represent him because of his indigency.

■ Through a series of recent decisions, the Supreme Court has removed all doubt of the right of an indigent state court defendant to a full and meaningful review of his criminal conviction. In Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), it held that such a defendant has an unqualified right to the assistance of counsel on appeal to the highest court of the state. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955), and Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), held that such a defendant is entitled to a free transcript of the proceedings at the trial for the purpose of preparing his appeal. The Supreme Court's decisions in these cases, and in the related cases of Eskridge v. Washington Prison Bd., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958), and Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), have made it clear that the right to review upon an appeal is a basic right which the Due Process Clause and the Equal Protection Clause guarantee to indigent defendants as fully as to those who can afford to pay their own way, for there can be no equal justice where the right of a defendant to take an appeal "depends on the amount of money he has." Griffin v. Illinois, supra, 351 U.S. p. 19, 76 S.Ct. p. 591, 100 L.Ed. 891; Douglas v. California, supra, 372 U.S. p. 355, 83 S.Ct. 815, 9 L.Ed.2d 811.

### The Power of the Federal District Court

An illuminating discussion of the historic concept of the writ of habeas corpus, and of its common law, constitutional and statutory foundations found in Fay v. Noia, supra, need not be reviewed here, for Townsend v. Sain, 372 U.S. 293, p. 312, 83 S.Ct. 745, p. 757, 9 L.Ed.2d 770 (1963), handed down the same day, in a continuation of the exposition of the nature and scope of the Great Writ epitomized it all in its holding:

"The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew."

Understandably, the next part of the Supreme Court's opinion immediately upheld the duty to exercise such power.

### The Duty of the Federal District Court

Again for a unanimous court, Mr. Chief Justice Warren continued, 372 U.S. pp. 312–313, 83 S.Ct. p. 757, 9 L.Ed.2d 770:

"We turn now to the considerations which in certain cases may make exercise of that power mandatory. The appropriate standard—which must be considered to supersede, to the extent of any inconsistencies, the opinions in Brown v. Allen [344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469]—is this: Where the

facts are in dispute, the federal court on habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

A majority of the Supreme Court then laid down some criteria for the guidance of federal habeas corpus courts in determining when a trial type hearing must be held, 372 U.S. p. 313, 83 S.Ct. p. 757, 9 L.Ed.2d 770:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

Implicit in every one of the enumerated criteria (except category (4)) and in their elaboration by the Supreme Court is a direction to scrutinize the record with very great care, for how else can it be determined whether the matters referred to were "not resolved," "not fairly supported," "not adequate," "not adequately developed," or "not afford[ed]."

### The State Court Record

Coming now to a scrutiny of the state court's decision, there are two paths leading back from its denial of the petition which must be explored. The sub-stance of the state court's memorandum is concentrated in three sentences, and it is here that the paths begin:

"[Burstein] went [to the prison] for the specific purpose of telling the petitioner that he was going to withdraw the appeal. In a conversation with the petitioner he was so informed. The petitioner consented to his withdrawal and told Mr. Burstein that he was unable to obtain funds for the appeal."

While a "district Judge may, in the ordinary case in which there has been no articulation, properly assume that the state trier of facts applied correct standards of federal law to the facts," Townsend v. Sain, supra, 372 U.S. p. 315, 83 S.Ct. p. 758, 9 L.Ed.2d 770, there is some doubt whether a cavalier assumption should be made here. Leaving to one side the ambiguity of whether it was "*his* withdrawal" or "that he was going to withdraw the appeal" which was consented to, it is unclear whether the court intended that consent to be equated to the correct constitutional standard of waiver.

Where the right to the one and only appeal the petitioner has is to be denied him on the ground that he waived the right to continue an appeal already timely filed, "the only relevant substantive law is federal—the 14th Amendment." Fay v. Noia, supra, 372 U.S. p. 431, 83 S.Ct. p. 845, 9 L.Ed.2d 837. The sphere of constitutional liberties, as distinguished from interparty contractual agency relationships, has been given special protection. One is altogether private, e. g. as between the petitioner and his lawyer; the other lies in the area where the courts are by substantive command required to guard the full panoply of the petitioner's constitutionally protected rights. Where the Supreme Court met the question of waiver in particular relation to the right of review by a state prisoner in Fay v. Noia, supra, it gave it detailed attention, 372 U.S. p. 439, 83 S.Ct. p. 849, 9 L.Ed.2d 837:

"The classic definition of waiver enunciated in Johnson v. Zerbst, 304

U.S. 458, 464 [58 S.Ct. 1019, 82 L. Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291 [68 S.Ct. 1049, 92 L.Ed. 1356.] At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. Carnley v. Cochran, 369 U.S. 506, 513–517 [82 S.Ct. 884, 8 L.Ed.2d 70;] Moore v. Michigan, 355 U.S. 155, 162–165 [78 S.Ct. 191, 2 L.Ed.2d 167.] A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. E. g., Rice v. Olson, 324 U.S. 786. [65 S.Ct. 989, 89 L.Ed. 1367.]"

In view of these many facets which bear on the question, there is sufficient doubt as to whether the correct standard of waiver was applied by the state court to require a plenary hearing in this court. See Townsend v. Sain, supra, 372 U.S. p. 315, n. 10, 83 S.Ct. p. 758, 9 L.Ed.2d 770.

The second path leading back from the decision reveals the disregard of a constitutional standard of more compelling significance. No matter what the judge may have thought Taylor "consented to" there was no contrary indication for any conclusion other than that he was given the impossible choice of either paying a fee which he was too poor to pay or "consenting" to the withdrawal.[3]

### The Hearing Before This Court

Full inquiry into the circumstances bearing upon the critical issue of whether Taylor intentionally relinquished or abandoned his right to appeal at a trial type hearing at which both parties were represented by counsel centered on the direct dealings between Taylor and his new counsel.

Within an hour after Taylor was sentenced, and while still in the detention section of the courthouse, Taylor was visited by Mr. Burstein, an attorney, who had not represented Taylor at the trial. He told petitioner that he could tear the case apart on appeal and was retained then and there at an agreed fee of $2,000. Petitioner's wife gave the counsel a partial retainer. On June 7, 1958 counsel for Taylor paid the Clerk $61.00 and filed an appeal to the Supreme Court of Errors, together with a request for an extension of time to file a draft finding. Two additional motions extended the time for the draft finding until September 2, 1958.

Counsel received the trial transcript on or about August 5, 1958 and on August 10, 1958 paid the court reporter $199.00 out of funds paid to him by petitioner's wife. Disturbed over not having received the balance of his fee, counsel conferred with petitioner on August 28, 1958 while visiting another client at the

---

**3.** What is implicit in the decision was unmistakable in Burstein's testimony before the state court:

"I asked for two continuances hoping we'd get a fee, and I came here with a specific object * * * I came here specifically to tell Mr. Taylor we were going to drop the appeal because we had no money."

prison. Both petitioner and counsel remember that the entire emphasis of the conference was on the money for the appeal.

Counsel, who kept no memo of the meeting, and had an active criminal practice in 1958, explained why the money was necessary and that he was not an eleemosynary organization. Counsel testified inconsistently both that he informed petitioner that he, counsel, would withdraw from the appeal and that he would withdraw the appeal itself if the fee was not forthcoming.

Counsel stated that petitioner's promises regarding the fee had not been kept, and he indicated that he did not place much reliance on petitioner's statement that petitioner would get money for counsel from some one who owed him money. Counsel conceded that he did not know whether petitioner understood that the appeal was to be withdrawn.

Counsel in effect told the petitioner—"No money, no appeal"—which petitioner interpreted to mean counsel would "quit" the case if petitioner did not pay the fee. Petitioner neither directed, nor authorized, his counsel to withdraw the appeal.[4]

At the time Taylor was convicted, he was without funds to bear the costs of an appeal to the Supreme Court of Errors of the State of Connecticut.

He was then, and still is destitute of property with which to pay a lawyer to assist him in the preparation and prosecution of an appeal. The attorney who undertook to represent him on appeal knew at that time that Taylor was an indigent.

The attorney never made any effort to investigate the possible grounds of appeal and he admittedly did not discuss any with Taylor.

Taylor never made a considered choice to withdraw the appeal. He did not, by word or conduct, lead his attorney to reasonably believe that he consented to the attorney's decision to withdraw the appeal. He never intentionally relinquished or abandoned his right to appeal. He did not know it was going to be withdrawn.

On September 4, 1958, two days after the expiration of the time to perfect the appeal by filing the draft finding, counsel wrote both the presiding judge and the State's Attorney that "it had been decided" to withdraw the appeal. At no time did counsel write petitioner informing him of the withdrawal of the appeal. Nor did counsel ever send a copy of either letter to petitioner. On October 4, 1958, counsel filed with the Superior Court an original and two copies of the withdrawal of appeal. He never wrote petitioner, nor did he forward a copy of the withdrawal of the appeal to the petitioner at the prison.

Significantly, as counsel conceded at the hearing, no Connecticut Superior Court Judge would have permitted him to withdraw from the case on either September 4 or October 4, 1958 without due notice to the client allowing him time to employ another lawyer. Additional limitations upon the right of an attorney to throw up an unfinished task to the detriment of his client are always imposed by Canon 44 of the Canons of Professional Ethics before an attorney can withdraw from a case in which he has appeared.[5] Conn. Practice Book (1963).

All of the exhibits which were in the state court file corroborate the fact that

---

4. Burstein testified:

"The Court: Was there any indication that you got from the client that he didn't want the appeal taken?

The Witness: Was there any indication that I got that he did not want the appeal taken! Oh, no. I believe he wanted the appeal taken, but as I say, he threw up his hands, 'We haven't got the money. I'm sorry.

We can't go ahead.' That was the indication I got from him."

5. Apart from the effects suffered by Taylor, the distressing consequences from the attorney's choice of this method of abandoning the case have imposed many burdens on many officials charged with the duty of administering criminal justice.

Taylor did his very best to pursue an appeal.

The following conclusions are reached:

1. The petitioner is being held in imprisonment by the State of Connecticut, pursuant to a judgment of conviction.

2. He has exhausted his state remedies.

3. The laws of the State of Connecticut provide for a direct appeal by convicted criminal defendants.

4. The failure to grant Taylor an appeal from his conviction to the Supreme Court of Errors has unlawfully denied to him the equal protection of the laws contrary to the 14th Amendment.

5. The petitioner is entitled to the assistance of counsel who will act as his advocate throughout all of the appellate proceedings (6th Amendment right to counsel).

### The Appropriate Remedy

With commendable zeal, assigned counsel has urged the court to condition the petitioner's release upon the grant of a new trial.

With all due respect to the trial judge (now Associate Justice of the Supreme Court of Errors), it is suggested that the lapse of some 5½ years after the trial of this case to him, combining within himself the proper functions of judge and jury, at the same time that he was also presiding over a jury trial of a co-defendant with all its complexities has enlarged as well as intensified the risk that findings of fact which he will be required to make now are more likely to be the product of a reconstruction from the transcript, influenced more by what the finder is looking for than the result of a reliable recollection of the evidence introduced at the trial. To what extent that may be so in any particular case may not be known without probing the memory of the judge. I know of no test or rule of inordinate delay which operates to forbid a delayed finding of facts by a trial judge.

It must be left to the judge to resort to introspection and to test his own memory. His judicial objectivity and integrity and his weighty regard for the protection of the rights of accused defendants may be relied upon to lead him to unhesitatingly refuse to make a finding of any fact if he now has any reasonable doubt that it is not truly supported by his own memory.

The court is grateful to Jacob D. Zeldes, who, as assigned counsel for the petitioner, has most ably represented him in the preparation and trial of this case.

### ORDER

A writ shall issue that the petitioner shall be discharged from custody unless, within a reasonable time, the filing of an appeal to the Supreme Court of Errors from the 1958 conviction is permitted, with reasonable opportunity given thereafter for presenting the case on appeal; and unless he is furnished with the assistance of counsel who will act as his advocate throughout all of the appellate proceedings.