STATE v. EMORY JOSEPH ROUX, ALIAS DAVID L. WILLARD.

(Filed 16 December 1964.)

**1. Criminal Law § 149—**

The Supreme Court may issue the extraordinary writ of *certiorari* in its discretion to review judgment in a post conviction hearing to ascertain the validity of the judgment and correct any errors therein. G.S. 15-222.

**2. Criminal Law § 143—**

A defendant has a right to appeal from a conviction in the Superior Court for any criminal offense. G.S. 15-180.

**3. Criminal Law § 148—**

It is the duty of appellant to see that the record is properly made up and transmitted, but an indigent defendant is entitled to appointment of counsel and to have the county make available to him the transcript and all records required for an adequate and effective appellate review. G.S. 15-4.1.

**4. Constitutional Law § 32—**

A defendant in a criminal action may intelligently and understandingly waive his right to appeal, but such waiver is not knowingly made if defendant, at the time of waiver, is without knowledge of his rights, and the courts will indulge every reasonable presumption against waiver.

**5. Waiver § 2—**

Ordinarily, a waiver is an intentional relinquishment or abandonment of a known right or privilege.

**6. Constitutional Law § 32—　　Findings held to disclose that defendant did not knowingly waive his right to appeal.**

The court's findings, supported by evidence, were to the effect that defendant was an indigent, that, upon his conviction, notice of appeal was given in open court, that his trial counsel was allowed to withdraw from the case because he had not been paid, that defendant unsuccessfully sought to obtain a transcript of the trial from the court reporter, and that defendant then in open court announced that he desired to abandon his appeal. There was nothing in the findings of fact to indicate that defendant knew he had a constitutional right to have the State provide him with a transcript of the trial or other means of presenting his contentions on appeal as good as those available to a nonindigent defendant, or that defendant waived his right to have counsel appointed to prosecute his appeal. *Held:* The waiver of appeal was not knowingly and intelligently made, and the cause is remanded for proper proceedings. G.S. 15-4.1, G.S. 15-5.

CERTIORARI to review a final judgment entered by *Hubbard, J.,* in a post conviction hearing held pursuant to the provisions of G.S. 15-217 *et seq.* at the June 1963 Session of PITT County superior court.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*
*Milton C. Williamson for petitioner appellant.*

PARKER, J. About May 1963 defendant filed with the superior court of Pitt County a petition seeking a review of the constitutionality of his trial at the October Term 1959 of the superior court of Pitt County, in which trial he was convicted and received substantial prison sentences which he is now serving. G.S. 15-217 *et seq.* In his petition he prays that the verdict and judgment be set aside, and that he be awarded a new trial. The solicitor for the State filed an answer to his petition. On 22 May 1963 Judge Hubbard entered an order in which, after reciting that the defendant is an indigent, he appointed Milton C. Williamson of the Pitt County Bar as counsel to represent defendant at the post conviction hearing. G.S. 15-219.

At the June 1963 Session of the superior court of Pitt County Judge Hubbard held a post conviction hearing as requested by defen-

dant. He entered a final judgment, in which he made the following findings of fact, which we summarize:

In Case No. 7217 defendant was charged in an indictment with the larceny on 25 October 1958 of personal property of the value of $28,-000 owned by George Lautares, John Lautares and Pearl Lautares. In Case No. 7218 defendant was charged in an indictment on the same day with breaking and entering a building occupied by George Lautares, John Lautares, and Pearl Lautares, with intent to commit larceny, and with attempting to open a vault, safe, and other secure places therein by the use of nitroglycerine, dynamite, gunpowder, and other explosives, and by an acetylene torch, in violation of G.S. 14-57.

These two cases were consolidated by consent and tried together at the October 1959 Term of Pitt County superior court. Defendant was represented by Frazier Woolard, a member of the Beaufort County Bar. Defendant pleaded not guilty and was convicted as charged in both indictments by the jury. In Case No. 7217 he was sentenced to imprisonment for a term of 10 years. In Case No. 7218 he was sentenced to imprisonment for a term of not less than 20 nor more than 25 years. He is now serving these sentences.

Defendant in open court gave notice of appeal to the Supreme Court. The usual appeal entries were made, and he was allowed 45 days in which to state and serve his case on appeal.

After notice of appeal was given, the Criminal Minute Docket Book 29, page 619, shows that defendant's counsel Woolard asked permission of the court to withdraw as counsel, assigning as the reason therefor that he had not been paid by defendant for his services. The court directed that defendant's counsel's request be discussed further by defendant and his counsel. The record is silent as to what transpired.

After giving notice of appeal defendant in open court asked the court reporter for an interview. The same day the reporter went to the jail and talked with the defendant. Defendant asked the reporter for a transcript of the evidence and record in his trial, and offered to give the reporter a wrist watch of the retail cost value when new of $350 in payment therefor. The court reporter refused to accept the watch in payment for a transcript, and a transcript was not furnished by him to defendant. Defendant made no further effort to obtain the transcript, nor did his attorney of record.

At the November 1959 Term of the superior court of Pitt County defendant in open court announced that his former counsel Woolard had withdrawn as his counsel, and that he desired to abandon and withdraw his appeal to the Supreme Court. Defendant signed a statement withdrawing his appeal, and, thereupon, an order was entered by

the presiding judge dismissing the appeal and directing that commitment issue. Nothing further was done with respect to the appeal.

Defendant testified at the post conviction hearing that he requested Judge Bundy presiding at the November Term 1959 to appoint counsel to prosecute his appeal. The record is silent as to this. The court is unwilling to accept the uncorroborated testimony of the defendant that such request was made, and, therefore, in view of the silence of the record in this respect, finds that no such request was made.

The record does not reveal the financial condition of defendant at the time of his trial. Defendant testified at the post conviction hearing that he had money and personal property and an equity in real estate located in Nevada of a value in excess of $15,000 at the time of his arrest, about one year prior to his trial, that during the interval between his arrest and trial his equity in the real estate was wiped out by foreclosure, that the money, cashier's cheque, and money orders in his possession when he was arrested were seized by the law enforcement officers, and his automobile was repossessed by the financing agency. He further testified that he had a wrist watch of a retail value of $350 when new, and personal clothes of a market value of $200. Nothing in the record, except the statement that his counsel has not been paid, throws any light on defendant's financial condition, but in view of the defendant's effort to give the wrist watch for a copy of the transcript the court finds the defendant at the time of his trial was indigent and had no funds or property to pay for a transcript of the record of his trial and to employ counsel.

Defendant testified, and the court finds as a fact, that at the time the defendant withdrew his appeal, he did so willingly and voluntarily, without duress or compulsion of any kind, and no promise of leniency was made to him. Although defendant testified that he had only an eighth grade education, he is a highly intelligent individual, and knew and understood he was abandoning and withdrawing his appeal. He knowingly and deliberately adopted a course of procedure which at that time appeared to him to be for his best interest. This finding is made despite the testimony of the defendant at the post conviction hearing that he abandoned his appeal because of his inability to obtain a transcript of the evidence at his trial. In this connection the court takes into consideration the evidence induced at this hearing that within less than one year after withdrawal of the appeal the defendant filed with the Supreme Court a petition for a writ or writs of *certiorari* in a civil action growing out of the seizure of his moneys and property by law enforcement officers.

At the May Session 1963 of Pitt County superior court defendant filed an application for a post conviction hearing. Thereupon, Milton C. Williamson of the Pitt County Bar was appointed counsel for him and filed a subsequent petition for a post conviction hearing. The post conviction hearing was held on the petition drafted by defendant's counsel Williamson. The defendant is now indigent and unable to pay counsel or pay the cost of this proceeding.

During the post conviction hearing counsel for defendant stipulated that the only bases for granting the application were as follows: "(1) denial of the petitioner's constitutional rights by failure of the Court to furnish him with a transcript of the evidence and record of his trial; and (2) failure of the Court to appoint counsel for the prisoner to enable him to prosecute his appeal to the Supreme Court."

Based upon his findings of fact, Judge Hubbard made the following conclusions of law, which we summarize:

(1) Defendant was entitled to have the court furnish him a transcript of the evidence and record of his trial in order that he might prosecute his appeal.

(2) At the November 1959 Term of the superior court of Pitt County defendant withdrew his appeal, and thereby waived his constitutional rights to have a transcript of his trial furnished him.

(3) Defendant is now legally confined, pursuant to judgment of the superior court of Pitt County, and the commitment issued thereon.

Whereupon, based on his findings of fact and conclusions of law, Judge Hubbard ordered and decreed that defendant's petition be denied and that he be returned to the custody of the State Prison Department.

At the September 1964 Civil Session of Pitt County superior court Judge Morris entered an order directing Pitt County to pay the costs of preparing necessary copies of the case on appeal and the defendant's brief in the Supreme Court.

On 1 September 1964 we issued a writ of *certiorari* to review the final judgment entered by Judge Hubbard in the post conviction hearing. G.S. 15-222. A writ of *certiorari* is an extraordinary remedial writ, and "it issues from a superior to an inferior court, officer or commission acting judicially, and it lies only to review judicial or *quasi*-judicial action" to ascertain its validity and to correct errors therein. *Pue v. Hood, Comr. of Banks*, 222 N.C. 310, 22 S.E. 2d 896; *Realty Co. v. Planning Board*, 243 N.C. 648, 92 S.E. 2d 82.

In North Carolina G.S. 15-180 provides that "in all cases of conviction in the superior court for any criminal offense, the defendant shall have the right to appeal" to the Supreme Court. This statute further

STATE v. ROUX.

provides that criminal appeals are to be perfected and the cases for the Supreme Court settled, "as provided in civil actions." It is the duty of the appellant to see that the record is properly made up and transmitted. *S. v. Jenkins*, 234 N.C. 112, 66 S.E. 2d 819.

Judge Hubbard found as a fact that petitioner was an indigent at the time of his trial, conviction and sentence at the October 1959 Term of Pitt County superior court, and that he is now an indigent. He contends first that the failure of the superior court of Pitt County to furnish him, an indigent, with a copy of the transcript of his trial, and the failure of the same court to appoint counsel to represent him so as to perfect his appeal to the Supreme Court and to represent him on his appeal in the Supreme Court constitute a denial of his rights under the 14th Amendment to the United States Constitution; and second, that he, an indigent, unable to obtain a transcript of his trial, and without counsel, did not waive his right to appeal to the Supreme Court by signing a voluntary statement with the superior court of Pitt County as follows: "I am not now represented by counsel, my former counsel, Mr. Frazier Woolard of Washington, N. C. having withdrawn as my counsel. I desire and do now, in open court, abandon and withdraw my appeal to the Supreme Court."

The State contends that petitioner "effectively waived his constitutional rights to counsel on appeal and to a transcript of the trial record when he voluntarily in open court withdrew his appeal."

In *Douglas v. California* (1963), 372 U.S. 353, 9 L. Ed. 2d 811, the Supreme Court of the United States held that an indigent state court defendant has an unqualified right under the 14th Amendment to the United States Constitution to the assistance of counsel on appeal to the highest court of the state, when his appeal is to be heard and decided on the merits. Such a defendant can intelligently and understandingly waive his right to the benefit of counsel, because, "The constitutional right [to counsel], of course, does not justify forcing counsel upon an accused who wants none." *Moore v. Michigan*, 355 U.S. 155, 2 L. Ed. 2d 167, 172.

The constitutional right of an indigent defendant to the aid of the state in appealing or pursuing a post conviction remedy was first recognized in *Griffin v. Illinois* (1956), 351 U.S. 12, 100 L. Ed. 891, 55 A.L.R. 2d 1055. In the *Griffin* case, the United States Supreme Court vacated a judgment of the Illinois Supreme Court which had affirmed the dismissal of a petition under the Illinois Post Conviction Hearing Act, in which the petitioners alleged that manifest nonconstitutional errors were committed in their trial for armed robbery, and that they were denied a full appellate review of their convictions by the absence

of a transcript of the proceedings, which they lacked funds to purchase. In that case, a majority of the Court stated, "We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases." In *Eskridge v. Washington State Board of Prison Terms and Paroles* (1958), 357 U.S. 214, 2 L. Ed. 2d 1269; *Burns v. Ohio* (1959), 360 U.S. 252, 3 L. Ed. 2d 1209, the Supreme Court, applying the *Griffin* rule to indigent defendants convicted before 1956, established the retroactive effect of the *Griffin* rule. Since the *Griffin* case, the Supreme Court has consistently stated that while it does not hold a state, by reason of provisions of the 14th Amendment to the United States Constitution, must purchase a stenographer's transcript in every case where an indigent defendant in a criminal action cannot buy it, it has held that "the State must provide indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions." *Draper v. Washington* (1963), 372 U.S. 487, 9 L. Ed. 2d 899; *Lane v. Brown* (1963), 372 U.S. 477, 9 L. Ed. 2d 892; *Eskridge v. Washington State Board of Prison Terms and Paroles, supra;* Annot., 6 L. Ed. 2d 1295. The General Assembly in its 1963 session enacted a statute, Session Laws of North Carolina 1963, Ch. 1080, which is codified in G.S. 15-4.1 *et seq.* G.S. 15-4.1 provides for the appointment of counsel for indigent defendants charged with felonies and certain misdemeanors, and provides as follows: "When an appeal is taken under this section the county shall make available trial transcript and records required for an adequate and effective appellate review."

There seems to be little doubt that a defendant in a criminal action may intelligently and understandingly waive his right to appeal. *S. v. Lakey,* 191 N.C. 571, 132 S.E. 570; *S. v. Harmon (Mo.),* 243 S.W. 2d 326; *Dunn v. State,* 18 Okla. Crim. 493, 196 P. 739; 4 Am. Jur. 2d, Appeal and Error, § 270; 24 C.J.S., Criminal Law § 1668.

*Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, is a leading case defining waiver of a constitutional right. The question presented for decision was whether or not petitioner had waived his constitutional right to the aid of counsel in his trial in a federal district court on a charge of uttering and passing counterfeit money. The Court said: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the laws of fundamental rights.' A

STATE *v.* ROUX.

waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

In *Moore v. Michigan* (1957), 355 U.S. 155, 2 L. Ed. 2d 167, in the year 1938 a seventeen-year-old Negro of limited education and mental capacity, after expressly disavowing a desire for counsel, pleaded guilty in the Circuit Court to a charge of murder and was sentenced to imprisonment for life. In 1950 he filed a delayed motion for a new trial in the Circuit Court, asserting constitutional invalidity of his conviction and sentence because he did not have the aid of counsel at the time of his plea and sentence. The Circuit Court denied the motion, and the Supreme Court of Michigan affirmed. On *certiorari* a majority of the Supreme Court of the United States held, in part, that petitioner, as a matter of due process, unless he intelligently waived his constitutional right, was entitled to representation by counsel, and that he did not intelligently and understandingly waive his right to counsel, in view of the fact, showed by the evidence introduced in the proceedings for a new trial, that, prior to his plea of guilty, the sheriff informed him he could not protect him against mob violence if he did not plead guilty.

*Fay v. Noia* (1963), 372 U.S. 391, 9 L. Ed. 2d 837, was a case in which in 1942 three defendants, among them the petitioner in the instant *habeas corpus* proceedings, were convicted in a New York State court of a felony murder, the sole evidence against each defendant being his signed confession. The petitioner did not, but the other defendants did, appeal their convictions. When these appeals were unsuccessful, subsequent legal proceedings in the state courts resulted in the releases of the other defendants on findings that their confessions had been coerced. Petitioner instituted the present *habeas corpus* proceedings in the United States District Court for the Southern District of New York, in which the coercive nature of his conviction was conceded. Relief was denied on the ground that because of his failure to appeal he had not exhausted the remedies available in the state courts, within the meaning of the federal *habeas corpus* statute, but under peculiar circumstances of the case certificate of probable cause did issue. *United States v. Fay* (1960), 183 F. Supp. 222. The Court of Appeals for the Second Circuit reversed and ordered that petitioner's conviction be set aside and that he be discharged from custody unless given a new trial forthwith. *United States v. Fay,* 300 F. 2d 345. On *certiorari,* the Supreme Court of the United States in a majority opinion affirmed the judgment of

the Court of Appeals. The majority opinion held, in part, that the petitioner's failure to appeal could not be deemed an intelligent and understanding waiver of his right to appeal such as to justify the withholding of federal *habeas corpus* relief, in view of the fact that a retrial granted on appeal might well have led to a death sentence, as shown by a statement made by the State trial judge in imposing sentence, that petitioner's past record and his involvement in the crime almost led the judge to disregard the jury's recommendation against the death sentence.

Judge Hubbard made, *inter alia,* these crucial findings of fact: When petitioner was convicted and sentenced at the October 1959 Term he appealed in open court to the Supreme Court. That at the time of such trial petitioner was an indigent, and was unable to pay for a transcript of the record for his trial and to employ counsel to prosecute his appeal. That when his employed counsel withdrew from the case, he did not request Judge Bundy presiding at the November 1959 Term to appoint counsel to prosecute his appeal. In *Carnley v. Cochran* (1962), 369 U.S. 506, 8 L. Ed. 2d 70, the Court said: "But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." See *Uveges v. Pennsylvania* (1948), 335 U.S. 437, 93 L. Ed. 127. Nothing in Judge Hubbard's findings of fact, or in the record before us, suggests that petitioner waived his right to have counsel appointed for him to prosecute his appeal.

There is nothing in Judge Hubbard's findings of fact, or in the record before us, to indicate that petitioner, an indigent, knew he had a constitutional right to have the State provide him with a transcript of the proceedings of his trial, or with other "means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defender with similar circumstances." Judge Hubbard found as a fact that petitioner in his impoverished condition tried, without success, immediately after he was convicted and sentenced at the October 1959 Term to obtain from the court reporter a transcript of the record of his trial by offering him in payment his wrist watch.

Considering all of these circumstances, it is manifest that when petitioner, an indigent, without counsel, without means to employ counsel, and without having intelligently and understandingly waived his right to have the aid of counsel, and without being able to secure a transcript of the proceedings of his trial, and with nothing to indicate that he knew he had a constitutional right to have the State provide him with means to secure a full appellate review of his trial, and therefore was unable to prosecute his appeal to the Supreme Court, filed a

written statement with Judge Bundy at the November 1959 Term that he desired to abandon and withdraw his appeal to the Supreme Court, that this did not constitute an intelligent and understanding waiver of his right to prosecute his appeal taken in open court. Judge Hubbard erred in holding otherwise, and in denying his petition *in toto.*

When this opinion is certified down to the superior court of Pitt County, it, at the first criminal session thereafter, to wit, 25 January 1965, shall issue an order directing his present court-appointed lawyer of record, Milton C. Williamson, to prepare and serve upon the solicitor for the State with all reasonable promptness a statement of petitioner's case on appeal from his conviction and sentence at the October 1959 Term of Pitt County superior court so as to afford petitioner an adequate and effective appellate review of his trial, the cost of securing a transcript of his trial, if available, or other means of preparing such statement of case on appeal to be paid for by Pitt County, G.S. 15-4.1, and further directing the said counsel to prepare, file a brief, and argue the case in the Supreme Court, the cost of which is to be paid by Pitt County, G.S. 15-4.1, and petitioner's counsel's fees to be paid by the State, G.S. 15-5. At such session the superior court shall direct the solicitor for the State to act on the statement of the case on appeal served on him with all reasonable promptness. And all of this is to the end that petitioner's case on appeal can be argued during the Spring Term 1965 of the Supreme Court. *Dowd v. United States,* 340 U.S. 206, 95 L. Ed. 215; *United States v. Reincke,* 225 F. Supp. 985.

Error and remanded with directions.