STATE v. DAVID EDWARD WHITE, FRANCIS PAUL WHITE, WILLIAM HARRIS NICHOLS

No. 86

(Filed 23 August 1968)

**1. Criminal Law §§ 156, 181— State may petition for certiorari to review post-conviction judgment**

The State, as well as a prisoner, may petition for *certiorari* to review a final judgment in proceedings under the Post-Conviction Hearing Act, G.S. 15-217 *et seq.*

**2. Criminal Law § 181— post-conviction proceedings are not substitute for appeal**

Proceedings under the Post-Conviction Hearing Act are not a substitute or an alternative to direct appeal.

**3. Criminal Law § 181— Post-Conviction Act — error which could have been presented on appeal**

The Post-Conviction Hearing Act does not license a collateral attack upon any ruling which could have properly been presented by a direct appeal from the judgment pronounced in the original trial.

**4. Criminal Law § 181— scope of Post-Conviction Act**

The Post-Conviction Hearing Act incorporates *habeas corpus, coram nobis,* and any other common law or statutory remedy under which a prisoner may collaterally attack his sentence. G.S. 15-217.

**5. Criminal Law § 181— claims justiciable under Post-Conviction Act**

Only claims which have not been previously adjudicated are justiciable under the Post-Conviction Hearing Act.

**6. Constitutional Law § 30— constitutional guarantees of persons accused of crime — recognition by State**

North Carolina has fully recognized its obligation to protect every right guaranteed by both the state and federal constitutions to all those whom it accuses of crime.

**7. Criminal Law § 181— claims justiciable under Post-Conviction Act**

The Post-Conviction Act provides every defendant adequate opportunity for the adjudication of claimed deprivations of constitutional rights which prevented him from obtaining a fair trial, provided factors beyond his control prevented him from claiming them earlier.

**8. Criminal Law § 181— post-conviction proceedings — claims which could have been presented on appeal**

Alleged errors in a petitioner's trial which could have been reviewed on appeal may not be asserted for the first time or reasserted in post-conviction proceedings.

**9. Criminal Law §§ 84, 181; Searches and Seizures § 1— post-conviction proceedings — evidence allegedly obtained by unconstitutional search and seizure**

A prisoner may not attack his conviction in a post-conviction proceeding upon the asserted ground that the trial court admitted evidence which was obtained by unconstitutional search and seizure, since this alleged error could have been reviewed on direct appeal.

HUSKINS, J., took no part in the consideration or decision of this case.

ON *certiorari* issued upon application of the Attorney General to review a judgment of *Hubbard, J.,* in post-conviction proceedings at the April 1967 Session of PITT, docketed and argued as Case No. 87 at the Fall Term 1967.

Petitioners, William Harris Nichols, David Edward White, and Francis Paul White, were jointly tried at the 20 June 1966 Mixed Session of Pitt upon a bill of indictment charging them (1) with feloniously breaking and entering the Harris Supermarket of Greenville on 18 March 1966, and (2) with having in their possession without lawful excuse implements of housebreaking, to-wit: a pry bar, two crowbars, one eight-pound sledge hammer, two punches and two chisels.

At the trial, Nichols, an indigent, was represented by M. E. Cavendish, attorney, whom the court appointed to defend him. The other two defendants were represented by Milton C. Williamson, an attorney employed by them.

The evidence for the State tended to show: During the early

morning hours of 18 March 1966, Sergeant R. B. Elks of the Greenville Police observed a 1955 Ford automobile containing three men stop at the front door of the Harris Supermarket. The two passengers got out, and Elks saw the glass in front of the supermarket shake. The front door popped open about a foot and a half, and the men immediately got back into the automobile without having entered the store. The car was driven away. Elks followed the car for about six blocks and stopped it "about 1:52 a.m." upon the arrival of Officer Cannon, whom he had called for assistance. David Edward White, the driver, and Francis Paul White were in the front seat; Nichols, in the back. The three were arrested for breaking into the Harris Supermarket and placed in the police car. Upon Elks' request, David White gave him the car keys so that the Ford could be moved. Officer Cannon drove the car off the street and locked it. The officers retained the keys.

After taking the men to jail, Elks, Cannon, and three other officers returned to the Harris Supermarket. There they observed marks on the metal door where it had been pried open. Elks' testimony leaves the time of the officers' return to the supermarket uncertain. He first said it was "about 1:15 or 1:30." He then said "it was sometime after 1:00, it was a short time." Later, he said it was "shortly after 2:50." He also testified, however, that the automobile was moved to the police station about 30 minutes after the petitioners were taken to jail. There it was searched by Elks, Cannon, and Officer Briley. At that time, a warrant (presumably for breaking into Harris Supermarket) had been served upon the three petitioners. Elks testified that the warrant was served "about 1:00 a.m." In the automobile, the officers found gloves, tape, chisels, crowbars, hammers, a bag of corks, and several punches. An eighteen-inch crowbar, wrapped in tape, was "under the right side of the front seat"; two crowbars were in the trunk. "A set of four gloves" was found on the back seat and "a set of two gloves" under the right front seat. In the trunk of the car was a bag containing an eight-pound sledge hammer, two chisels, and two punches. In the glove compartment, the officers found friction tape and a bag containing a number of cork stoppers.

Prior to the introduction of the foregoing evidence, none of the defendants made a motion to suppress it on the ground that it was obtained by a warrantless search. The defendants did, however, interpose an objection to the admission into evidence of each item found in the automobile. The objections were overruled, and exceptions to the rulings entered in the record.

The State's evidence also tended to show: On 11 March 1966,

David Edward White had called at the office of the Harris Super-market and inquired if he could get his wife's check cashed there. The manager, who was busy, asked him to wait, but he left.

Defendant Nichols offered no evidence. Defendants White offered evidence which tended to show: They are residents of Laurel, Maryland. On 15 March 1966, David Edward White had rented the automobile in which he, his brother, Francis Paul White, and Nichols, a casual acquaintance, had taken a trip to Myrtle Beach, South Carolina. They spent Tuesday night at a truck stop in Virginia and arrived at Myrtle Beach the following day. They did not sleep Wednesday night. On Thursday morning, they left Myrtle Beach and were en route to Maryland when Officer Elks stopped them. A few minutes before, David Edward White had attempted to awaken his two passengers so that one of them might take the wheel or help him stay awake. When they got out of the car, however, each staggered to such an extent that he realized neither was in a condition to drive.

At the time of their arrest, defendants (who had taken with them only the clothes they were wearing) had not opened the trunk of the rented car. None of them knew that the tools were in the vehicle. The automobile was searched without their permission.

The week before, David Edward White, who operates a feed company at Laurel, Maryland, had been in North Carolina attempting to collect some past-due accounts. During the trip he had investigated Greenville as a place to live; he had gone into Harris Super-market "to find out the procedures of living here, and operating with those procedures."

The jury found each defendant guilty as charged. On the count of unlawful possession of implements of housebreaking, each received an active sentence to be served in the State's prison — Nichols, 8-10 years; David Earl White, 5-7 years; Francis Paul White, 5-7 years. Upon the count of breaking and entering, the judgment as to Nichols was confinement "in the State's prison for not less than 8 nor more than 10 years, sentence to begin at the expiration of sentence imposed for possession of burglary tools." This sentence, however, was suspended for five years upon good behavior. On the second count, both Whites received a sentence of 5-7 years to begin at the expiration of the sentence imposed upon the first count. These sentences were suspended upon the same conditions as those imposed upon Nichols.

Nichols and Francis Paul White gave notice of appeal to the Supreme Court. The latter, in open court and in writing, withdrew

his appeal on 1 September 1966. David Edward White did not give notice of appeal. At the June Term 1966, M. E. Cavendish, at his request, was relieved as counsel for Nichols, and J. W. H. Roberts, attorney, was appointed to represent Nichols upon his appeal to the Supreme Court.

Nichols' appeal was docketed in this Court as Case No. 92 at the Fall Term 1966. None of his six assignments of error related to the admissibility of the implements of housebreaking which the officers found in their search of the automobile. That case on appeal was devoid of any indication that objection had been made to the admission of the evidence, and Nichols made no contention that the search was unlawful. In a per curiam opinion, filed 21 September 1966, *State v. Nichols*, 268 N.C. 152, 150 S.E. 2d 21, this Court found no error in the trial.

In October 1966, while serving the sentences imposed, the three defendants filed petitions for post-conviction review under G.S. 15-217 *et seq.* Each averred that his constitutional rights had been violated at the trial in that evidence procured through an illegal search and seizure had been used to convict him of the unlawful possession of implements of housebreaking. No other grounds for relief were alleged.

Upon the representation of each that he was indigent, on 4 November 1966, the court appointed petitioners' present counsel, A. Louis Singleton, to represent them in the post-conviction proceedings. At the 28 January 1967 Session of Pitt, the three petitioners, who were present in open court with their counsel, stipulated that their petition related only to their conviction on the count charging the possession of implements of housebreaking without lawful excuse, and that they were not asking that their conviction and sentence for storebreaking be vacated.

In his answer to defendants' petition, the solicitor for the State admitted that the search of the automobile in which petitioners were riding at the time they were arrested was without a warrant. He denied, however, that the search was illegal. Upon the hearing he contested petitioners' right to relief upon two principal grounds: (1) Petitioners may not collaterally attack the legality of the search in post-conviction proceedings, since the correctness of the trial court's ruling, which admitted the evidence obtained by the search, was reviewable as an incident of the trial by direct appeal to the Supreme Court. Petitioners White waived their right to question the judge's ruling by failing to appeal; Nichols waived his right by failing to raise the question upon his appeal. (2) No search warrant was re-

quired since the search was made (a) as an incident of a lawful arrest for a felonious breaking which the officer had seen petitioners commit, (b) for the implements with which the breaking had been effected, and (c) as soon as possible after the two arresting officers had transported the three petitioners to jail, returned to the scene for their Ford and moved it to the jail, where it could be safely and more conveniently searched.

The transcript of petitioners' trial was introduced in evidence at the post-conviction hearing and is a part of this case on appeal. It indicates that objections were duly made to the introduction of the seized items. After considering the transcript (the only evidence introduced at the hearing) and the argument of counsel, Judge Hubbard made findings in accordance with the facts as stated above. Upon those findings, he held as a matter of law that: (1) the search of the automobile in which the petitioners were arrested was not made incident to the earlier arrest for breaking and entering and, being a warrantless search, was illegal; (2) the introduction into evidence of the items procured by the search was a substantial denial of petitioners' constitutional rights; (3) post-conviction proceedings provide an appropriate remedy to adjudicate the question which petitioners now raise; (4) none of the petitioners knowingly waived his constitutional rights, either at trial or subsequent to said trial; and (5) petitioners have the right to petition for redress as to one conviction without seeking a new trial on both counts.

Judge Hubbard thereupon entered judgment awarding petitioners a new trial upon the count charging the unlawful possession of implements of housebreaking and authorizing the release of each upon bond in the amount of $5,000.00. (The Attorney General informs us that petitioners White gave the required bond, and that petitioner Nichols was delivered to the State of Maryland upon a detainer which that state had filed against him.) The State of North Carolina excepted to the judgment awarding petitioners a new trial and petitioned this Court for certiorari, which was granted.

*T. W. Bruton, Attorney General; Theodore C. Brown, Jr., and Ralph A. White, Jr., Staff Attorneys for the State.*

*Gaylord & Singleton for defendant appellees.*

SHARP, J.

[1] The State, as well as a prisoner, may petition for certiorari to review a final judgment in proceedings under the Post-Conviction Hearing Act (Act), G.S. 15-217 — G.S. 15-222. *State v. Merritt,*

264 N.C. 716, 142 S.E. 2d 687; *State v. Burell*, 254 N.C. 317, 119 S.E. 2d 3; G.S. 15-222. See N. C. Sess. Laws 1967, Ch. 523.

[9]     In this proceeding, petitioners sought and obtained post-conviction review upon the allegation that the trial judge had erroneously admitted evidence obtained by an unlawful search and seizure. One of the three petitioners (Nichols) had appealed his conviction to this Court without assigning the admission of the evidence as error; the other two did not appeal. Post-conviction review was had entirely upon the transcript of the original trial, and one superior court judge has purported to grant petitioners a new trial for errors assertedly committed by another — errors which were properly reviewable upon appeal. At the threshold, therefore, we are confronted with this basic question: May petitioners attack their conviction in a post-conviction proceeding upon the asserted ground that the trial court admitted evidence which had been illegally obtained in violation of the Fourth Amendment to the United States Constitution?

[2]     This Court has consistently held that proceedings under the Act are not a substitute or an alternative to direct appeal. *Branch v. State*, 269 N.C. 642, 153 S.E. 2d 343; *State v. Graves*, 251 N.C. 550, 112 S.E. 2d 85; *State v. Wheeler*, 249 N.C. 187, 105 S.E. 2d 615; *State v. Cruse*, 238 N.C. 53, 76 S.E. 2d 320; *Miller v. State*, 237 N.C. 29, 74 S.E. 2d 513. Since July 1965, when the Act was rewritten, G.S. 15-217 has provided: "The remedy herein provided is not a substitute for nor does it affect any remedies which are incident to the proceedings in the trial court, or any remedy of direct review of the sentence or conviction, but, except as otherwise provided in this article, it comprehends and takes the place of all other common-law and statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment, and shall be used exclusively in lieu thereof."

[3]     In the first proceeding under the Act to come before this Court, *Miller v. State*, 237 N.C. 29, 74 S.E. 2d 513 (1953), Ervin, J., pointed out that it did not license a collateral attack upon any ruling which could have properly been presented by a direct appeal from the judgment pronounced in the original trial: "It is not designed to add to the law's delays by giving an accused two days in court where one is sufficient for the doing of substantial justice under fundamental law. It is not devised to confer upon an accused, who is defended by counsel of his own selection or competent counsel appointed by the court, a legal privilege, at his own election, to have his rights arising under the common law and the statutes adjudicated at a time of the State's choosing in the original criminal action,

and his rights arising under the constitutions of his State and Nation adjudicated at a subsequent time of his own choosing in another proceeding. It is enacted to provide an adequate and available post-trial remedy for persons imprisoned under judicial decrees who suffered substantial and unadjudicated deprivations of their constitutional rights in the original criminal actions resulting in their convictions because they were prevented from claiming such constitutional rights in the original criminal actions by factors beyond their control." *Id.* at 51, 74 S.E. 2d at 528-29.

In *State v. Cruse,* 238 N.C. 53, 76 S.E. 2d 320 (1953), Devin, J., again emphasized that the Act did not "afford to a person heretofore convicted of crime the right to present to this Court assignments of error in the trial in which he was convicted and from which he did not appeal. . . . The statute provides a procedure by which a person convicted of crime may thereafter obtain a hearing upon the question whether he was denied due process of law. It affords an opportunity to inquire into the constitutional integrity of his conviction." *Id.* at 58, 76 S.E. 2d at 323.

In *State v. Wheeler,* 249 N.C. 187, 105 S.E. 2d 615 (1958), this Court reversed a judgment of the Superior Court in post-conviction proceedings which denied a new trial to the petitioners, who were "without counsel or witnesses" at the trial in which they were convicted and sentenced. In noting that the purpose of the Act was to redress the deprivation of constitutional rights such as those, the Court — speaking through Higgins, J. — said, "The Post Conviction Hearing Act is not a substitute for appeal. It cannot be used to raise the question whether errors were committed in the course of the trial. The inquiry is limited to a determination whether the petitioners were denied the right to be represented by counsel, to have witnesses, and a fair opportunity to prepare and to present their defense. . . ." *Id.* at 191-92, 105 S.E. 2d at 620; *accord, State v. Graves, supra.*

In *State v. Wilson,* 269 N.C. 297, 152 S.E. 2d 223, an indigent, unable to perfect his appeal because of inability to pay counsel, filed a petition for a post-conviction hearing under the Act upon grounds which should have been asserted upon appeal. The hearing judge correctly disposed of the petition by directing counsel to apply to this Court for *certiorari.* We granted the petition, and — upon appeal — ordered a new trial. Similarly, in *State v. Roux,* 263 N.C. 149, 139 S.E. 2d 189, counsel for the petitioner in post-conviction proceedings was directed to apply to this Court for *certiorari* to review the petitioner's trial when it was manifested that the petitioner, an indigent without counsel, had withdrawn his appeal because he did

not know that "he had a constitutional right to have the State provide him with means to secure a full appellate review of his trial. . . ." *Id.* at 157, 139 S.E. 2d at 195. *Accord, State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225.

[4, 5]    The Act as now written incorporates *habeas corpus, coram nobis,* and any other common law or statutory remedy under which a prisoner may collaterally attack his sentence (G.S. 15-217, Ch. 352, Sess. Laws 1965). Thus, a petitioner sentenced upon a plea of guilty to a crime not charged in the bill of indictment received his discharge in *McClure v. State,* 267 N.C. 212, 148 S.E. 2d 15. See also *State v. Burell, supra,* in which the petitioner alleged that sentence had been imposed upon him by a court without jurisdiction. However, only claims as to which there have been no prior adjudication are justiciable under the Act.

This is the first post-conviction proceeding to come to us in which a judge has awarded a prisoner a new trial for alleged errors which could have been reviewed upon direct appeal from the judgment pronounced. Nor have we, upon granting certiorari to review a judgment denying post-conviction relief, reviewed asserted errors in a criminal trial which were brought forward for the first time in a post-conviction proceeding. In *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343, we allowed certiorari to review a judgment denying a new trial to the petitioner serving a life sentence for murder. The hearing judge, upon plenary and convincing evidence, had found facts which disproved the petitioner's contention that he had been deprived of an opportunity to prepare his defense. The judge had also considered and overruled the petitioner's assertions that his constitutional rights had been violated when evidence was introduced at the trial that fingerprints found on objects at the scene of the crime compared with his fingerprints, which had been taken while he was in custody and before he had procured counsel. In affirming the judgment denying the petitioner a new trial, we reiterated and re-emphasized that the Act was not a substitute for appeal. However, for the consolation of the petitioner, who had not appealed his conviction, we pointed to both state and federal authorities holding that the fingerprint-evidence had not violated his constitutional rights.

In the present proceeding, the hearing judge apparently took the view that federal habeas corpus is now available to State prisoners to challenge illegal searches or seizures in cases arising after the decision in *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. ed. 2d 108, and that we therefore should afford petitioners a corresponding collateral review "for a full airing of federal claims." See *Linkletter v.*

*Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. ed. 2d 601; *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. ed. 2d 837; *Henry v. Mississippi,* 379 U.S. 443, 85 S. Ct. 564, 13 L. ed. 2d 408.

We are, of course, aware that petitioners — despite their "procedural default" in the State court — may yet, in a federal habeas corpus proceeding, pursue their claim that they were convicted by illegally obtained evidence. Indeed, were a prisoner to have both direct and collateral review in the State court of his claim that he was deprived of constitutional rights in his trial, he might still have a de novo "evidentiary hearing" in federal habeas corpus proceedings if the district judge concludes that the facts found by the State court were not "reliable findings." Mr. Chief Justice Warren, in *Townsend v. Sain,* 372 U.S. 293, 83 S. Ct. 745, 9 L. ed. 2d 770, has said that the district judge "may, and ordinarily should, accept the facts found in the hearing (in the state court). *But he need not.* In every case he has the power, *constrained only by his sound discretion,* to receive evidence bearing upon the applicant's constitutional claim." *Id.* at 318, 83 S. Ct. at 760, 9 L. ed. 2d at 789. (Italics ours.) Since the Supreme Court of the United States has the last word in questions involving the Federal Constitution, it would serve no useful purpose were we here to marshal the arguments which weigh against a decision that an inferior federal court may order the release of one held pursuant to a judgment of a court of this State, or to voice our foreboding as to its ultimate effect upon our federal system and the administration of justice.

**[6, 7]** North Carolina has fully recognized its obligation to protect every right guaranteed by both the state and federal constitutions to all those whom it accuses of crime. At state expense it furnishes an attorney to any indigent charged with a serious crime. G.S. 15-4.1, G.S. 15-5. Prior to trial, it affords to every defendant full opportunity to assert and establish constitutional or other objections to the grand jury which returned the bill of indictment against him, G.S. 9-23; *Miller v. State, supra.* If the State offers a defendant's confession, and objection is made that it was involuntary or "the product of constitutionally impermissive methods," the judge must — in the absence of the jury — hear evidence, find facts, and determine the question in a preliminary inquiry. *State v. Clyburn,* 273 N.C. 284, 159 S.E. 2d 868; *State v. Barber,* 268 N.C. 509, 151 S.E. 2d 51; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. When a defendant moves to suppress or objects to evidence upon the ground that it was obtained by illegal search and seizure, the state must likewise establish the legality of a warrantless search upon *voir dire.*

*State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334. After conviction, every defendant has the unqualified right to appeal. G.S. 15-180; *State v. Rhinehart,* 267 N.C. 470, 148 S.E. 2d 651; *State v. Graves, supra; State v. Cruse, supra.* Any indigent may appeal as a pauper and, if he has been convicted of a felony or of an offense less than the felony charged, the State pays the cost of the appeal. G.S. 15-181. The Post-Conviction Act provides every defendant adequate opportunity for the adjudication of claimed deprivations of constitutional rights which prevented him from obtaining a fair trial, provided factors beyond his control prevented him from claiming them earlier.

We are convinced that our laws fully meet the requirements of due process, and that we should not disrupt the administration of justice in North Carolina by changing the orderly procedures established by the legislature to review a convicted defendant's claims that his constitutional rights have been violated. Furthermore, in view of the present instability of longstanding decisions and the diversity in the views of the different federal district court judges, any change which we might make in our procedure in an effort to satisfy the federal courts would not necessarily accomplish that purpose. An additional hearing would merely provide a prisoner with one more inconclusive state remedy, for the Supreme Court has held (1) "that the federal habeas judge may in his discretion deny relief to an applicant who had deliberately by-passed the orderly procedure of State courts and in so doing has forfeited his state court remedies," *Fay v. Noia, supra* at 438, 83 S. Ct. at 849, 9 L. ed. 2d at 869, and (2) that the federal district judge may try the facts anew whenever he supposes that the state court judge has not "reliably found the relevant facts." *Townsend v. Sain, supra* at 318, 83 S. Ct. at 759, 9 L. ed. 2d at 788.

In *Anderson v. Gladden,* 234 Ore. 614, 383 P. 2d 986, *cert. denied,* 375 U.S. 975, the Supreme Court of Oregon denied relief under its post conviction act to a petitioner who had failed, prior to his trial, to challenge the bill of indictment on the ground that Indians had been systematically excluded from the grand jury which returned it. O'Connell, J. (concurring with Denecke, J., in the majority opinion), said: "It is possible that under *Fay v. Noia* . . . the writ of habeas corpus is still available to petitioner in the federal courts, but I do not think that this should concern us. . . . [T]he legislative assembly has expressed the policy of this state with respect to the application of the principle of res judicata in post-conviction proceedings. . . . That is a salutary rule. If the United States Supreme Court feels differently, it is privileged to open the federal

courts to provide additional relief. But we are not required to make our procedure conform to that policy." *Id.* at 628-29, 383 P. 2d at 993.

The inexpediency of a series of reviews, in each of which a prisoner asserts a particular violation of his constitutional rights, has nowhere been better stated and demonstrated than in *In re Sterling,* 63 Cal. 2d 486, 47 Cal. Rptr. 205, 407 P. 2d 5. In *Sterling,* the petitioners' conviction of gambling had been affirmed on appeal. Thereafter, in habeas corpus proceedings in the state court, they attempted again to attack the judgment on the ground that the evidence upon which they had been convicted was obtained by an unconstitutional search and seizure. The Supreme Court of California held that habeas corpus was not available to challenge the use of evidence thus obtained, and that habeas corpus did not provide "a second appeal." Traynor, C.J., speaking for a unanimous court, asserted — as do we — that his state's appellate procedure afforded every defendant a fair opportunity for an adjudication of all claimed deprivations of his constitutional rights. Reasoning that the use of illegally seized evidence — unlike an involuntary confession — carried no risk of convicting an innocent person, that the purpose of the exclusionary rule was to deter unconstitutional methods of law enforcement, and that that purpose is adequately served when a state provides an orderly procedure for raising the question at or before trial and on appeal, he said: "The risk that the deterrent effect of the rule will be compromised by an occasional erroneous decision refusing to apply it is far outweighed by the disruption of the orderly administration of justice that would ensue if the issue could be relitigated over and over again on collateral attack." *Id.* at 487-88, 47 Cal. Rptr. at 207, 407 P. 2d at 7.

Noting the intimations in *Mapp v. Ohio, supra* at 659, 81 S. Ct. at 1693, 6 L. ed. 2d at 1092 (fn. 9), and *Fay v. Noia, supra* at 438, 83 S. Ct. at 848, 9 L. ed. 2d at 869, that a petitioner's deliberate bypassing of orderly state procedures *could* deprive him of federal habeas corpus relief, Traynor, C.J., said: "Pursuit of (state) remedies will give a defendant a full adjudication of his claim and also lay the groundwork for immediate federal review. Under these circumstances, to authorize additional state collateral remedies would result only in needless repetition and delay. We have recognized the need to accomodate the state system to the existence of a federal collateral remedy . . . but such accomodation does not require the abandonment of procedures vital to the orderly administration of justice by the state courts. Preservation of a defendant's constitutional rights lies not in multiple state remedies that will ordinarily pro-

duce the same result, but in one effective state remedy plus an awareness on the part of all state officials that ultimate federal review is available. We expedite the availability of that federal remedy by the compilation of a full and adequate record and by insisting that one state remedy is ordinarily enough." *Id.* at 489, 47 Cal. Rptr. at 208, 407 P. 2d at 8. *Accord, In Re Lokey,* 64 Cal. 2d 626, 51 Cal. Rptr. 266, 414 P. 2d 394, *cert. denied,* 385 U.S. 888; *In Re Shipp,* 62 Cal. 2d 547, 43 Cal. Rptr. 3, 399 P. 2d 571, *cert. denied,* 382 U.S. 1012; *In Re Lessard,* 62 Cal. 2d 497, 42 Cal. Rptr. 583, 399 P. 2d 39. *In Shipp, supra,* the California court had previously said that the issue of a coerced confession raised at the trial "could not be embalmed for the purpose of transmigration to post-conviction procedures. To condone such piecemeal presentation and to sanction split adjudication between trial and post-conviction process would be to place a premium on covert retention of issues for post-judgment litigation in the event of defeat upon trial and appeal." *Id.* at 556, 43 Cal. Rptr. at 10, 399 P. 2d at 578.

[8, 9]    We adhere to our former decisions. Errors in a petitioner's trial which could have been reviewed on appeal may not be asserted for the first time, or reasserted, in post-conviction proceedings. See *People v. Eastman,* 33 Misc. 2d 583, 228 N.Y.S. 2d 156, *affirmed,* 18 App. Div. 2d 1102, 239 N.Y.S. 2d 972; *Ciucci v. People,* 21 Ill. 2d 81, 171 N.E. 2d 34; *cf. People v. Hamby,* 32 Ill. 2d 291, 205 N.E. 2d 456; *Collier v. Commonwealth,* 387 S.W. 2d 858 (Ky. Ct. App.). The answer to the question propounded at the beginning of this opinion is, therefore, No. Thus, we do not consider the question whether the instruments of housebreaking introduced into evidence at the trial were obtained by an unconstitutional search and seizure.

The judgment of the court below is reversed, and the cause remanded to the Superior Court for the entry of an order remanding petitioners to the custody of the warden of the State's prison.

Reversed.

HUSKINS, J., took no part in the decision or consideration of this case.